1

2

3

4

5

HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

6

7

8

9

10

11

12

13

14

HOLLY RYDMAN, individually and on
behalf of a class of similarly situated
individuals,

Plaintiff,

v.

CHAMPION PETFOODS USA INC., a
Delaware corporation, and CHAMPION
PETFOODS LP, a Canadian limited
partnership,

Defendants.

NO. 2:18-CV-01578-TL

**DEFENDANTS' RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION**

NOTE ON MOTION CALENDAR:
JANUARY 27, 2023, PER DKT. NO. 98

ORAL ARGUMENT REQUESTED

15

16

17

18

19

20

21

22

23

24

25

26

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ............................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................ 3

    A. The Creation of Champion Petfoods ......................................................... 3

    B. Champion's Diverse Diets and Packaging ................................................. 4

    C. Each of Champion's Diets and Labels Evolved ........................................ 5

    D. Each of Champion's Diets Contain Lot-by-Lot Variations ...................... 5

    E. Background as to Heavy Metals ................................................................ 6

    F. Facts Specific to Plaintiff ......................................................................... 7

III. LEGAL STANDARD ...................................................................................... 8

IV. *REITMAN* REQUIRES DENIAL OF CLASS CERTIFICATION ................ 9

V. CERTIFICATION SHOULD BE DENIED BECAUSE COMMON ISSUES DO NOT PREDOMINATE ............................................................... 12

    A. Deception Cannot be Established Through Common Evidence ............... 12

        1. The "non-fresh" omission requires a bag-by-bag and/or lot-by-lot review of ingredients ................................................................... 13

        2. The "non-regional" omission requires a bag-by-bag and/or lot-by-lot review of ingredients ................................................................... 16

        3. Plaintiff's heavy metals evidence raise individualized issues. ........ 20

    B. Materiality Cannot be Established through Common Evidence ............... 22

    C. Causation Requires Individualized Determinations ................................ 24

    D. The Elements of Plaintiff's Unjust Enrichment Claim Cannot Be Established Through Common Evidence .................................................. 27

    E. The Alleged Damages Cannot be Measured Across Classes ................... 28

VI. THE INJUNCTIVE RELIEF CLASS SHOULD NOT BE CERTIFIED ....... 30

VII. CONCLUSION .............................................................................................. 30

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - ii -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                                  **Page(s)**

3
*AVH & BJ Holdings 2, LLC v. LaClare Invs., LLC*,
4
No. 51001-4-II, 2019 WL 1049521 (Mar. 5, 2019)....................................................21

5
*Ballew v. Matrixx Initiatives, Inc.*,
No. CV-07-267-RHW, 2008 WL 4831481 (E.D. Wash. Oct. 31, 2008)................................30
6

*Blough v. Shea Homes, Inc.*,
7
No. 2:12-cv-01493 RSM, 2014 WL 3694231 (W.D. Wash. July 23, 2014) ..........................25

8
*Bushbeck v. Chicago Title Ins. Co.*,
9
No. C08-0755JLR, 2012 WL 12845605 (W.D. Wash. Nov. 15, 2012) ..........................10, 14

10
*Colangelo v. Champion Petfoods USA Inc.*,
No. 6:18-CV-1228, Dkt. 108 (N.D.N.Y. Feb. 24, 2021) ........................................................1
11

*Cole v. Keystone RV Co.*,
12
No. C18-5182 TSZ, 2021 WL 3111452 (W.D. Wash. July 22, 2021),
13
*aff'd sub nom.*, No. 21-35701, 2022 WL 4234958 (9th Cir. Sept. 14, 2022) ...................21, 23

14
*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).........................................................................................9, 11, 28, 29

15
*Converse v. Vizio, Inc.*,
16
No. C17-5897 BHS, 2020 WL 2922490 (W.D. Wash. June 3, 2020)....................................29

17
*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .............................................................................................9
18

*In re Fluidmaster, Inc. Water Connector Components Prods. Liab. Litig.*,
19
No. 14-cv-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ............................................29

20
*G.G. v. Valve Corp.*,
21
579 F. Supp. 3d 1224 (W.D. Wash. 2022)..............................................................................26

22
*Geier v. M-Qube Inc.*,
314 F.R.D. 692 (W.D. Wash. 2016) ......................................................................................25
23

*Haunreiter v. Lewis Cnty. Democrat Cent. Comm.*,
24
4 Wn. App. 2d 1039 (2018) ...............................................................................................30

25
*J.T. Colby & Co. v. Apple Inc.*,
No. 11-CV-4060, 2013 WL 1903883 (S.D.N.Y. May 8, 2013),
26
*aff'd*, 586 F. App'x 8 (2d Cir. 2014)..................................................................................24

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

*Kelley v. Microsoft Corp.*,
    395 F. App'x 431 (9th Cir. 2010) .........................................................................26

*Kelley v. Microsoft Corp.*,
    No. C07-475 MJP, 2011 WL 13353905 (W.D. Wash. May 24, 2011) ....................27

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. 2020)....................................................................11, 12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ...............................................................................9

*Panag v. Farmers Ins. Co. of Washington*,
    166 Wn. 2d 27 (2009) ........................................................................................24

*Reichert v. Keefe Commissary Network, LLC*,
    331 F.R.D. 541 (W.D. Wash. 2019) .....................................................................26

*Reitman v. Champion Petfoods*,
    No. 2:18-cv-01736, 2019 WL 7169792 (C.D. Cal. Oct. 30, 2019),
    *aff'd*, 830 F. App'x 880 (9th Cir. 2020)............................................................ *passim*

*Robertson v. GMAC Mortg. LLC*,
    982 F. Supp. 2d 1202 (W.D. Wash. 2013),
    *aff'd*, 702 F. App'x 595 (9th Cir. 2017)..........................................................12, 13, 23

*Shaker v. Champion Petfoods USA Inc, et al.*,
    No. 18-cv-13603, Dkt. 45 (E.D. Mich. Nov. 24, 2020)..........................................8

*Shaker v. Champion Petfoods USA Inc.*,
    No. 2:18-cv-13603, Dkt. 104 (E.D. Mich. April 12, 2022) ..................................1, 8

*Song v. Champion Petfoods USA, Inc.*,
    No. 18-cv-3205, 2020 WL 7624861 (D. Minn. Dec. 22, 2020) ............................17

*Steele v. Extendicare Health Servs., Inc.*,
    607 F. Supp. 2d 1226 (W.D. Wash. Mar. 24, 2009)..............................................21

*Torres v. Mercer Canyons, Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ..............................................................................26

*Tran v. Sioux Honey Ass'n, Coop.*,
    471 F. Supp. 3d 1019 (C.D. Cal. 2020) ................................................................28

*W.H. Hughes, Jr., Co. v. Day*,
    162 Wn. App. 1069 (2011) ..................................................................................27

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) .................................................................................................9

*Weaver v. Champion Petfoods USA Inc.,*
   No. 2:18-cv-01996, Dkt. 142 (E.D. Wis. Feb. 18, 2020) ........................................1

*Weidenhamer v. Expedia, Inc.,*
   No. C14-1239RAJ, 2015 WL 7157282 (W.D. Wash. Nov. 13, 2015) .............25, 27

*White v. Symetra Assigned Benefits Serv. Co.,*
   No. 20-1866 MJP, 2022 WL 3092849 (W.D. Wash. Aug. 3, 2022) ................19, 20

*Young v. Toyota Motor Sales, U.S.A.,*
   196 Wn. 2d 310 (2020) ..........................................................................................23

*Young v. Toyota Motor Sales, U.S.A.,*
   9 Wn. App. 2d 26, 33 (2019), *aff'd*, 196 Wn. 2d 310 (2020) ..........................12, 23

*Zarinebaf v. Champion Petfoods USA Inc.,*
   No. 18 C 6951, 2022 WL 910638 (N.D. Ill. Mar. 29, 2022) ..................................29

*Zarinebaf v. Champion Petfoods USA Inc.,*
   No. 18-cv-6951, Dkt. 196 (N.D. Ill. May 24, 2022) ..........................................1, 29

*Zeiger v. WellPet LLC,*
   526 F.Supp.3d 652 (C.D. Cal. 2021) ....................................................................11

*Zinser v. Accufix Rsch. Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001) ..............................................................................30

**Statutes**

RCW § 19.86.020 ..............................................................................................................12

Washington Consumer Protection Act............................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23 .....................................................................................................9, 19, 21

Fed. R. Civ. P. 23(a) .............................................................................................................9

Fed. R. Civ. P. 23(b)(2).................................................................................................3, 29, 30

Fed. R. Civ. P. 23(b)(3)........................................................................................2, 9, 11, 20

Fed. R. Civ. P. 56 .................................................................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - v -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700    fax 206 587 2308

## I.   INTRODUCTION

The Ninth Circuit affirmed the denial of class certification in *Reitman v. Champion Petfoods*, the related action from which this case originated. *See* No. 2:18-cv-01736, 2019 WL 7169792 (C.D. Cal. Oct. 30, 2019), *aff'd*, 830 F. App'x 880 (9th Cir. 2020).  Plaintiff joined *Reitman* as a Named Plaintiff on April 19, 2018.  *See* No. 2:18-cv-01736, Dkt. 39. After the court held it lacked personal jurisdiction over Plaintiff's claims, *id.* at Dkt. 98, she filed this action before the Court.  Dkt. 01.  Plaintiff now moves to certify ten classes corresponding to ten of the 23 diets (and their respective packaging) that were at issue in *Reitman*. This Court should follow precedent and deny Plaintiff's Motion for Class Certification [Dkt. 101] (the "Motion").

Plaintiff implicitly concedes that *Reitman* applies to the varying alleged misrepresentations on Champion's packaging. Attempting to sidestep *Reitman*, Plaintiff seeks to only certify omissions-based claims under the Washington Consumer Protection Act ("WCPA") and for unjust enrichment. Fatal to the Motion, the Ninth Circuit affirmed that "individualized inquiries requiring bag-to-bag determinations predominate over common questions applies whether the misrepresentations are based on affirmative statements on, or **omissions** from, the packaging." *Reitman*, 830 F. App'x at 881 (emphasis added). The *Reitman* opinions are equally instructive as to Plaintiff's inability to certify ten classes, each consisting of consumers in Washington who purchased a specific diet of Champion dog food produced at its DogStar kitchen. This is the same sub-class approach that the Reitman plaintiffs argued before the district court and the Ninth Circuit, and which was rejected. *See Reitman*, 2019 WL 7169792, at *10 (holding the request in the alternative for subclasses is "futile because the analysis would still require bag-by-bag determinations that would predominate over common questions to the class."); *Reitman*, 830 F. App'x at 881 ("Reitman does not explain how creating subclasses based on diets would cure the need for individualized bag-to-bag inquiries.").

Individualized issues predominate over Plaintiff's three omissions theories: that Champion has omitted from its packaging that the food may contain (1) low, safe levels of heavy metals

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 1 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

(arsenic, cadmium, mercury, and lead), (2) non-regional ingredients (sourced domestically but not "regionally," or sourced internationally), and (3) non-fresh ingredients (meaning freshly frozen and thus "raw" or past a "best-used-by" date) or regrinds (kibble that was re-ground typically because it was misshapen in the manufacturing process). A review of the packaging (which changed over time for every diet corresponding to a proposed class and which differed depending on the diet, location of the kitchen, and brand) reveals that critical statements and context on the front and back of each package inform consumers that Champion sources ingredients from locations hundreds or even thousands of miles away from its Kentucky DogStar kitchen and uses many forms of non-fresh ingredients, such as raw, dried, freeze-dried, and dehydrated ingredients. Given that many, if not most, Champion consumers purchased multiple diets over time starting years before the proposed class period, class members for each of the ten proposed classes would have been exposed to Champion's packaging in contexts that shifted during the proposed class period, and thus developed different understandings of the statements on Champion bags that cannot be erased from a consumer's memory.

Although Plaintiff professes to seek certification solely as to her omission theories, the Motion exposes that Plaintiff's ability to have classes certified depends on affirmative representations, which she defines as "Packaging Claims" and describes as "dispositive questions," contending they "concealed the challenged omissions," "bolster the omissions," and "reinforce the misleading nature of the Omissions." Mot. at 2–4; *see also id.* at 5, 8–11, 15–17, 19, 23, 24, 28 (discussing "Packaging Claims"). The Motion's constant references to the "Packaging Claims" highlight that any alleged omissions are inextricably intertwined with Champion's affirmative representations. This takes us back to *Reitman*, which took up both the plaintiffs' misrepresentation and omissions claims when analyzing predominance under Rule 23(b)(3), and concluded that

> 'one must first look on the outside of the packaging to determine how ingredients are described, and then compare those descriptions to the ingredients inside the bag to determine whether there was a misrepresentation.' In essence, though certain phrases may be found on every package, each package's labeling provides additional context that will require individualized analysis across Class members

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

that predominate over any common questions.

*Reitman*, 2019 WL 7169792, at *10 (internal citation omitted).

In short, certification is far from "textbook" and questions cannot be decided "in a single stroke," as Plaintiff incorrectly asserts. Mot. at 3. Rather, as explained below, certification is unwarranted because individualized issues predominate key elements of Plaintiff's claims. Plaintiff is unable to prove through common evidence that there is an actionable deception, that any purported deception was material, or that any purported deception by Champion proximately caused Plaintiff's injury. In addition, Plaintiff's damages methodology does not (and cannot) meet *Comcast's* mandate that the model must fit Plaintiff's theories of liability. Nor is a Rule 23(b)(2) class appropriate for multiple reasons.

For the reasons set forth below, the Court should deny Plaintiff's Motion in its entirety.

## II.   FACTUAL BACKGROUND

### A.   The Creation of Champion Petfoods

Champion was founded in about 1979 in Alberta, Canada, and starting in about 2006, Champion became a pet food industry disruptor by adopting a nutritional philosophy to make dry kibble dog foods that mirror how dogs and their ancestor wolves attain nutrition in the wild. Decl. of C. Ogbonna ("**Ogbonna Decl.**"), filed herewith, at ¶¶ 8, 11; Dep. of P. Muhlenfeld dated Nov. 13, 2018 ("**Exhibit 1**"),[1] at 24:1–12; Dep. of P. Muhlenfeld dated Dec. 4, 2018 ("**Exhibit 2**"), 138:13–139:17; 171:14–19. Unlike traditional dog food, which relies on relatively inexpensive grains, potatoes, or other fillers that provide little, if any, nutrition, and many synthetic supplements, Champion's dog food consists primarily of animal-based proteins to meet dogs' nutritional needs, similar to how they attained nutrition in nature (albeit within the limitations of dry kibble). *Id.* at 138:13–17; Dep. of J. Johnston dated Nov. 29, 2018 ("**Exhibit 3**") at 47:15–48:6. To implement its "Biologically Appropriate" philosophy, Champion obtains as many

---

[1] All numbered exhibits (Exs. 1–11) refer to those attached to the Declaration of David A. Coulson, filed with and in support of this motion.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 3 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

ingredients as possible from suppliers located relatively close to Champion's kitchens. Ogbonna Decl. ¶ 12. In addition, Champion's diets during the class periods include a significant amount of fresh ingredients (preserved through refrigeration) and raw (fresh-frozen) ingredients, while the typical dog food has **no** fresh or raw ingredients. *Id.* ¶¶ 14–15.

## B.      Champion's Diverse Diets and Packaging[2]

Beginning in around 1990, Champion manufactured its dog food at its NorthStar kitchen in Morinville, Alberta, Canada.  Decl. of C. Milam ("**Exhibit 4**") ¶ 7.  Champion's NorthStar diets were sold in the U.S. until 2016. *Id.* ¶ 8.  Many of these packages contained critical statements that do not appear on the packaging at issue, such as "Never-Frozen." Ogbonna Decl. Exs. A–D. In January 2016, Champion opened its DogStar kitchen in Bowling Green, Kentucky and throughout 2016, transitioned the manufacturing of nearly all of its dog food sold in the U.S. to come from DogStar. Ex. 4 ¶ 8.  During the putative class period, Champion sold in the U.S. about 20 different ACANA diets (with ACANA comprised of three families of diets (Singles, Heritage, and Regionals)), and 17 different ORIJEN diets manufactured at DogStar, each made from a unique formula and ingredient profile. Ogbonna Decl. ¶¶ 29–30; Ex. 4 ¶¶ 12–13. Champion diets sold to U.S. consumers between 2016 and 2019 from DogStar had at least two distinct packages, and ACANA labels underwent significant changes when Champion replaced its 2016 labels with its 2018 labels. *See* Ogbonna Decl. ¶ 49; Pl.'s Exs. 1–6.

Each package reflects the diverse characteristics of that diet. Ogbonna Decl. ¶ 29. The labeling on the front and back emphasize the particular diet's philosophy and specific ingredients for that diet, including the form in which the ingredient was added into the formula and the source of key ingredients. *Id.* ¶¶ 36–39. For example, every bag at issue contains varying statements explaining that certain ingredients within that diet are fresh, raw, freeze-dried, dried, dehydrated, or oils. Pl.'s Exs. 1–10. In addition, every bag at issue contains varying statements explaining

---

[2] Images of Champion's DogStar 2016 and 2018 packaging corresponding to the ten classes are attached as Exhibits 1 to 10 to the Motion. Images of Champion's NorthStar 2012 and 2014 packaging purchased by Plaintiff are attached as Exhibits A to E to the Declaration of Chinedu Ogbonna, filed with and in support of this motion.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 4 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

where certain ingredients are sourced. *Id.* For example, the ORIJEN Six Fish bag states throughout the front and back of the bag that the fish was sourced in New England. Pl.'s Ex. 10.  ACANA bags each provide on the front of the bag the city or county and state where the key ingredients were sourced. Pl.'s Exs. 1–9. For example, ACANA Grassland's rainbow trout was sourced in Soda Springs, Idaho and quail was sourced in Columbia, South Carolina. Pl.'s Ex. 7.

**C.     Each of Champion's Diets and Labels Evolved**

Each diet's recipe changed before and during the class period, as Champion made changes to its formulas for nutritional reasons or due to ingredient sourcing (for example, NorthStar diets often used Canadian-sourced ingredients, while DogStar diets did not). Ex. 4 ¶ 14. Champion's packaging was updated to reflect these changes. For example, the 2016 ORIJEN Six Fish bag contains a "Meat Math" panel that lists the six main species of fish included in the diet: Atlantic herring, yellowtail flounder, Atlantic mackerel, Acadian redfish, monkfish, and Alaskan cod, but the 2017 and 2018 bags' panels show that the formula replaced cod as a top-six ingredient with silver hake. *Id.* ¶ 15; Pl.'s Ex. 10 at 3, 6, 7. Further, the "Meat Math" panel on the 2016 bag of ORIJEN Six Fish stated the formula is made with "2/3 lb **fresh or raw** wild Alaskan cod" and the 2017 and 2018 bags stated it was included in a **dried** form (albeit in different amounts). *Id.*

Each diet's ingredient sources changed over the class period, as Champion changed suppliers over time. Ex. 4 ¶¶ 10, 51. Champion's packaging was updated to reflect these changes. For example, the 2016 ACANA Heritage Red Meat package states its Yorkshire pork was sourced from Rockfield, Kentucky and its 2018 label states its Yorkshire pork was sourced from Fannettsburg, Pennsylvania. *Id.* ¶ 52; Pl.'s Ex. 2. In addition, some ingredients were supplied by multiple suppliers and therefore, a lot-by-lot analysis would need to be undertaken to determine an ingredient's source. Pl.'s Ex. 20. For example, the 2016 ACANA Lamb & Apple bag states the lamb was "grass-fed on Kentucky and New Zealand ranches," arriving "fresh or raw." Pl.'s Ex. 4.

**D.     Each of Champion's Diets Contain Lot-by-Lot Variations**

Every production run of a diet is unique. For example, whether an ingredient was included

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 5 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

in a diet fresh or raw depended in part on the season and the size of the catch or harvest, Ex. 4 ¶¶ 28–36, and thus, would necessitate a lot-by-lot analysis.  Not every production run utilizes regrinds (most did not) or ingredients past their best-used-by dates (which was, in fact, rare). *Id.* ¶¶ 37, 39; Decl. of J. Johnston ("**Exhibit 5**") at ¶ 21; Pl.'s Ex. 24 at 73:7–15. And, as explained above, when an ingredient is sourced from multiple suppliers, a lot-by-lot analysis would be needed to determine the suppliers (and thus geographic source of ingredients) for each lot. Pl.'s Ex. 20. Finally, as Plaintiff contends, certain ingredients may contain measurable amounts of heavy metals, while others may not, and the manufacturing practices that are part of Plaintiff's heavy metals argument varied over time and by diet. Mot. at 16. Therefore, again, lot-by-lot analyses are needed to determine whether there was an actionable omission.

### E.    Background as to Heavy Metals[3]

Nearly all foods contain at least some heavy metals (arsenic, cadmium, lead, and mercury) because they are naturally present in the environment. *See* Expert Report of Dr. Robert H. Poppenga ("**Exhibit 6**") at 4–8.  Therefore, heavy metals exist in the ingredients used to make dog foods, such as mercury in fish. *Id.*  Heavy metals are commonly found in all dog foods, even though they are not added to the foods by the dog food manufacturer. *Id.* at 8–20. Champion does not add heavy metals as ingredients in its food or advertise that its food is "heavy metal-free." Ex. 5 ¶ 11; Ogbonna Decl. ¶ 44; Pl.'s Exs. 1–10.

Beginning in 2008, Champion conducted third-party testing to confirm that any heavy metals in its dog foods were far below levels of concern for dogs according to the National Research Council ("NRC") and, starting in 2011, the Food and Drug Administration ("FDA")'s Maximum Tolerable Limits ("MTLs"). Ex. 3 at 102:9–14, 144:1–4; Pl.'s Ex. 43 at -29. All testing, conducted both before and after this litigation commenced, demonstrates that the varying, low levels of heavy metals in Champion's diets are well below both the MTLs and the European Union

---

[3] Plaintiff executed a stipulation agreeing to withdraw all bisphenol-A ("BPA") and pentobarbital allegations in the Second Amended Complaint.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 6 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

regulatory standards, and thus Champion's dog food is safe to consume. Ex. 3 at 102:9–14, 144:1–4; Ex. 6 at 8, 12–13, 25–28, 40.

Plaintiff testified that she was aware that seafood could contain mercury and she was "aware that heavy metals are naturally found in foods." Pl.'s Dep. (**"Exhibit 7"**) at 68:18–25. Many online sources provide this information. The FDA has published studies online demonstrating that many foods consumed by humans contain heavy metals (including many ingredients used to make Champion's dog food). *See* FDA 2017 Total Diet Study (**"Exhibit 8"**). The Clean Label Project—a third party—tested, analyzed, and published details about the heavy metal levels in Champion's dog foods and other dog foods on its website in April 2017. Ogbonna Decl. ¶ 19. Plaintiff cited to its findings and online post in her pleadings. Dkt. 01 ("Compl.") ¶ 77; Dkt. 08 ("Am. Compl.") ¶ 88 n.26 (citing Clean Label Project, "Orijen: Why Aren't You Listening to Your Customers?", http://www.cleanlabelproject.org/orijen-customers/). Champion itself published a White Paper in May 2017 on its website expressly disclosing the average levels of heavy metals in its products and explaining that they fell within safe limits and are naturally found in our environment. Ogbonna Decl. ¶ 25; Ex. 6 at 7–8. Plaintiff attaches a draft of the White Paper to the Motion and cited to the White Paper in her pleadings. Pl.'s Ex. 33; Compl. ¶¶ 78–79; Am. Compl. ¶¶ 89–90 n.27. Finally, Plaintiff's advertising expert, Mr. Silverman, stated in his report, "it is my opinion that pet parents have had **access to many media reports** regarding the dangers posed to themselves and their pets by the presence of heavy metals," and that "they are **frequently exposed to news bulletins or articles** that address heavy metals, which may have the potential to harm their pet or compromise their nutrition." Dkt. 108-1 at ¶¶ 151, 195 (emphases added); *see id.* ¶¶ 149, 150, 152–153, 155–158 (listing media reports and news articles discussing heavy metals in water, baby food, and dog toys, among other things).

### F.    Facts Specific to Plaintiff

Plaintiff resides in Washington and purchased the following diets from NorthStar and/or DogStar between approximately December 2014 and February 2018: ORIJEN Six Fish, ACANA

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 7 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Singles Lamb & Apple, ACANA Singles Duck & Pear, ACANA Singles Pork & Squash, ACANA Regionals Grasslands, ACANA Regionals Meadowland, ACANA Regionals Wild Atlantic, ACANA Heritage Red Meat, ACANA Heritage Free-Run Poultry, and ACANA Heritage Freshwater Fish. Ex. 7 at 10:17–19, 45:6–11, 46:20–47:17. Prior to purchasing the food, she researched ORIJEN on the ORIJEN website. *Id.* at 19:21–20:3. There is no evidence that Plaintiff's dogs' consumption of Champion dog food resulted in illness or death. Ex. 6 at 39. Plaintiff seeks to certify ten classes, each defined as "[a]ll persons residing in the State of Washington who purchased [a specific ORIJEN or ACANA diet] from July 1, 2016, to the present."[4] Mot. at 1.

### III.    LEGAL STANDARD

A class may only be certified if it satisfies Federal Rule of Civil Procedure 23. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). This requires a "rigorous analysis" which "[f]requently … will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. . . . [A] district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

Plaintiff must demonstrate by a preponderance of the evidence that Rule 23's requirements are met and that certification is appropriate. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee*

---

[4] The latest that Plaintiff could claim to be misled by any alleged false or misleading statements, is February 2018, when she discontinued purchasing the dog food, or, alternatively, October 26, 2018, when this action was filed before the Court. Ex. 7 at 45:6–11; *see* Compl. As such, the putative class periods should end no later than October 26, 2018. The court in the related *Shaker* case agreed with Champion that the relevant time period for the plaintiffs' false advertising claims is up until the filing of their lawsuit:

> Champion argues, "Whether for class certification or as to the merits, the proper focus here is the advertising claims made on diets Plaintiffs actually purchased before they claim they had been misled, not on 'changes' to packaging that occurred after Plaintiffs allegedly discovered the 'truth' about the representations. Put another way, only statements made on bags up to April 2018 [the filing of *Reitman*] or October 2018 [the filing in E.D. Michigan, and here] could possibly meet the elements of any of Plaintiffs' claims or Champion's defenses." Champion has the better of the argument. The primary issues here are whether Champion's packaging prior to this litigation was misleading, whether it deceived plaintiffs, and whether Plaintiffs were injured as a result.

*Shaker v. Champion Petfoods USA Inc, et al.*, No. 18-cv-13603, Dkt. 45, at 3–4 (E.D. Mich. Nov. 24, 2020), attached hereto as **Exhibit 9**."

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 8 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

*Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). For a class to be certified under Rule 23(b)(3), Plaintiff must show (1) that questions of law or fact that are common to all of the class members "predominate over any questions affecting only individual members"; and (2) that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, because individual issues preclude a finding of predominance, class treatment is not the superior method of litigating them.

## IV.    *REITMAN* REQUIRES DENIAL OF CLASS CERTIFICATION

Plaintiff puts forward three arguments in an attempt to distinguish the Ninth Circuit's controlling *Reitman* opinion. Each fails. ***First***, Plaintiff argues that the "*Reitman* court did ***not*** address the omissions-based claims in deciding predominance." Mot. at 25. This argument was raised by the plaintiffs there on appeal and explicitly rejected by the Ninth Circuit:

> Reitman argues that the district court erred by focusing its predominance analysis only on affirmative misrepresentations and failing to consider allegedly uniform and material omissions from the dog food bag packaging. We disagree. The district court's conclusion that individualized inquiries requiring bag-to-bag determinations predominate over common questions applies whether the misrepresentations are based on affirmative statements on, or omissions from, the packaging.

*Reitman*, 830 F. App'x at 881; *see also Reitman*, 2019 WL 7169792, at *8 (acknowledging that "Defendants argue that common issues do not predominate because 'Plaintiffs cannot show that members of the class were exposed to the same misrepresentations or any omissions.'").

***Second***, Plaintiff tries to distinguish *Reitman* by asserting that the *Reitman* plaintiffs did not receive a presumption of reliance because they were exposed to different packaging statements,[5] and here, "even if uniform misrepresentations were required [under the WCPA], Plaintiff has remedied that issue" because she moves to certify "packaging that uniformly fails to disclose the presence or material risk of heavy metals, and inclusion of non-fresh and non-regional ingredients." Mot. at 25. This is belied by the packaging, which discloses in a variety of ways that

---

[5] Champion rebuts Plaintiff's "presumption of reliance" argument, *infra* at 24–27.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 9 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

ingredients were sourced from locations that are "non-regional" in Plaintiff's eyes and that the diets use many types of non-fresh ingredients. Pl.'s Exs. 1–10. Thus, there was no uniform omission because these disclosures varied from diet to diet and changed each time a diet updated its label. And where there are disclosures, there can be no actionable omissions. *See Bushbeck v. Chicago Title Ins. Co.*, No. C08-0755JLR, 2012 WL 12845605, at *9 (W.D. Wash. Nov. 15, 2012) ("a fully disclosed fee is not misleading, and therefore not 'deceptive,' under the WCPA."). Moreover, Plaintiff claims that issues in the case involve the affirmative representations, defined as the "Packaging Claims," which she claims conceal the omissions and bolster deceptiveness. Mot. at 3–4. This reinforces that the representations and omissions are intertwined, which puts this case on the same footing as *Reitman*. Plaintiff has not "remedied" the reasoning in *Reitman* that precluded certification.

**Third**, Plaintiff seeks to certify ten classes, each consisting of consumers who purchased a specific diet of Champion dog food produced at DogStar. This strategy is futile. Although the plaintiffs in *Reitman* initially sought a class that included all of Champion's diets produced at two kitchens, the *Reitman* court also rejected the plaintiffs' in-the-alternative request for sub-classes based on specific diets—which is being requested here by way of the diet-specific classes—as "futile because the analysis would still require bag-by-bag determinations that would predominate over common questions to the class." *Reitman*, 2019 WL 7169792, at *10. This sub-class approach was emphasized by the plaintiffs there on appeal, but the Ninth Circuit specifically affirmed the district court's rejection of sub-classes. *Reitman*, 830 F. App'x at 881 ("Reitman does not explain how creating subclasses based on diets would cure the need for individualized bag-to-bag inquiries.").

Plaintiff also cites *WellPet*, which denied class certification under Rule 23(b)(3) because the plaintiff's damages model failed under *Comcast*, but found common issues would predominate if there was one class per each formula of that dog food. Mot. at 25–26 (citing *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 696–97 (C.D. Cal. 2021)). The *WellPet* court acknowledged that

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 10 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

whether classes of one product could be certified "depend[s] on the nature and extent of the variation [of the packaging]" and Champion's packaging "var[ies] to such a degree to make class-wide determinations impracticable." *WellPet*, 526 F. Supp. 3d at 693. It noted:

> [Champion's] phrase 'regional' was used to describe ingredients sometimes … but other times, 'local' was used along with specific source identifiers for ingredients. Another example was that the ingredients identified as 'fresh' varied from bag to bag, so consumers would not be looking at the same representations. Consequently, the court found that there was a threat that the misrepresentations were truly individualized because the class members were presented with many varying bags.

*Id.* at 696. In contrast, "WellPet identifies no changes in the Menhaden Product" and "some Wellness Statements have been virtually unchanged on the other two products." *Id.* at 695. Thus, it found "[t]his makes [the *WellPet*] case unlike *Reitman*" because "the changes *within* each formula are relatively minor, occurred over time in an essentially uniform way, and can be addressed class-wide." *Id.* at 696–97. Plaintiff also relies on *Krommenhock*, where only "some of the labels for Products at issue were redesigned during the class period." Mot. at 26; *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 566 (N.D. Cal. 2020). Here, all of the labels pertaining to each of the ten proposed classes were redesigned multiple times, both before and during the class period, as Champion routinely revised its labeling. Ogbonna Decl. ¶ 49; *Id.* at Exs. A–E; Pl's. Exs. 1–10. *Krommenhock* further distinguished *Reitman* by observing that Champion's packaging "would require individualized analysis of the ingredients[.]" 334 F.R.D. at n.10.

Again, this case seeks to certify ten of the diets at issue in *Reitman*, but cannot avoid that the context, representations, and ingredients that varied in the *Reitman* bags also vary in these bags. That the *WellPet and Krommenhock* opinions had to distinguish *Reitman* reflects that Plaintiff's case, which is derivative of *Reitman*, should not be certified.

***Finally***, Plaintiff claims she has uncovered and presented additional evidence not relied on in *Reitman*, *see* Mot. at 26, but none of this evidence alters the *Reitman* decision. As discussed in detail below, each of Plaintiff's new exhibits, if anything, actually highlights the need for

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 11 - NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

1  individualized determinations that defeats predominance.[6] Further, Plaintiff's experts are unable

2  to support materiality, as discussed further, *infra* at 22–24.

3      Following *Reitman*, this Court should deny Plaintiff's Motion.

4  **V.    CERTIFICATION SHOULD BE DENIED BECAUSE COMMON ISSUES DO NOT PREDOMINATE**

5

6      Even if the *Reitman* opinions did not exist, because on this record individualized issues

7  predominate Plaintiff's claims, Plaintiff cannot prove the elements of her claims through common

8  evidence. The WCPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or

9  practices in the conduct of any trade or commerce." RCW § 19.86.020. "Washington courts have

10 held that a deceptive act must have the capacity to deceive a substantial portion of the population

11 and 'misleads or misrepresents something of material importance.'" *Robertson v. GMAC Mortg.*

12 *LLC*, 982 F. Supp. 2d 1202, 1209 (W.D. Wash. 2013), *aff'd*, 702 F. App'x 595 (9th Cir. 2017)

13 (citations omitted); *see Young v. Toyota Motor Sales, U.S.A.*, 9 Wn. App. 2d 26, 33

14 (2019), *aff'd*, 196 Wn. 2d 310 (2020) ("Implicit in the definition of 'deceptive' is the

15 understanding that the actor misrepresented something of material importance."). "A private cause

16 of action exists under the [W]CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or

17 commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or

18 property." *Robertson*, 982 F. Supp. 2d at 1209. Common issues do not predominate as to the

19 elements of deception, materiality, causation, and damages. For these reasons, the Motion should

20 be denied.

21     **A.    Deception Cannot be Established Through Common Evidence.**

22     Plaintiff cannot establish through common evidence that Champion committed an unfair

23 or deceptive act in violation of the WCPA because to determine whether a reasonable consumer

24 ────────────

[6] Plaintiff's exhibits 11, 23, and 20 are discussed *infra* at 14, 16, and 17–18, respectively. Plaintiff's exhibit 27 is not
25 relevant to the Motion because it is an internal spreadsheet containing draft language that was never placed on
packaging sold to consumers and Champion's notes after meeting with state regulators. Thus, none of these
representations were seen by Plaintiff or class members. Plaintiff's exhibit 25, identifying minor premixes that were
26 sourced internationally for some diets, too, would require individualized inquiries.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 12 -
NO. 2:18-CV-01578-TL

would have been deceived, the Court must first look to the outside of the packaging to determine how ingredients are described, and then compare that description to the ingredients and inclusions inside each bag, to determine whether there was a material omission. This analysis must keep in mind that both Champion's formulas and packages changed over time, and that variations in production lots occurred.

        **1.**    **The "non-fresh" omission requires a bag-by-bag and/or lot-by-lot review of ingredients.**

      Plaintiff offers what she contends is common evidence as to the use of frozen, expired, or regrind ingredients, Mot. 6–8, but none of this evidence is common. Quite the opposite, it demonstrates why individual issues predominate. To begin, context that appears on different packaging makes clear that non-fresh ingredients are included in the diets. For example, prior to purchasing the ORIJEN Six Fish diet, Plaintiff read that the diet was "made with whole wild-caught fish, 2/3 fresh or raw 1/3 dried" and that it included "freeze-dried liver infused for natural flavor," and she understood that the freeze-dried liver was an ingredient in the food, and agreed that an ingredient "that is freeze-dried is not fresh." Ex. 7 at 57:7–9, 93:19–24, 97:6–12.

      It also depends on what packaging a class member was exposed to, which introduces myriad individual issues due to many, if not most, consumers purchasing multiple diets made at NorthStar and later, DogStar, or even purchasing many different diets produced at DogStar. Indeed, most Champion consumers purchase multiple diets, such as Plaintiff who purchased many NorthStar and DogStar diets. *See* "**Exhibit 10**" (declaration showing consumers in related cases often purchased multiple diets). For example, a reasonable consumer, like Plaintiff, who bought NorthStar diets advertising that the ingredients were "never frozen" (*see* Ogbonna Decl. Exs. A–D), and which did not convey that raw (freshly frozen) ingredients were utilized, as the DogStar diets did (Pl.'s Exs. 1–10), would have a different understanding of whether all ingredients were fresh. Thus, consumers like Plaintiff, who bought Champion dog food over prolonged periods of time, saw many bag variations and often relied on statements on earlier versions of bags that are not at issue.

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

As a second example, the front of the packaging for ACANA Wild Atlantic states that each species of fish in the diet was caught in "New Bedford, Massachusetts" and ORIJEN Six Fish states on the packaging that it contains "wild-caught New England Fish" and "New England Mackerel" caught in "New Bedford, Massachusetts." Pl.'s Exs. 9, 10. These labels convey that while the fish is caught fresh, due to its source, much of it would be delivered to DogStar raw (*i.e.*, fresh-frozen). Similarly, context on the 2016–2017 ACANA Lamb & Apple bag makes clear that New Zealand lamb must also be delivered raw. Pl.'s Ex. 4. These varying statements all informed consumers' understanding that not all ingredients would be included "fresh." In other words, whether Champion's packaging had a material omission depends on the packaging's varying representations, which requires a bag-by-bag determination. *Bushbeck*, 2012 WL 12845605, at *10 (where representations "varied from customer to customer … individual determinations regarding what each class member was told … will be required to determine if [defendant] made any … material omissions to any class member").

With respect to frozen ingredients, Plaintiff takes issue with the fact that Champion did not "track" whether and to what extent a particular ingredient was included into the formula in a raw or fresh state. Mot. at 7, 26 (citing Pl.'s Ex. 11). But this is simply because Champion's ability to include fresh versus raw ingredients depended on its supply, the season, and the size of the harvest or catch, among other factors. Ex. 4 ¶¶ 28, 30, 32, 33, 35, 36. "[B]eef is an example … Beef [is delivered to DogStar] in both fresh and raw formats, and it's not distinguished by description or item number on the formula. And so it could get used [meaning, added into a formula] in either a fresh or in a raw format. … [But] poultry is almost always fresh. Eggs are always fresh. So it's an ingredient-by-ingredient basis." Dep. of J. Johnston dated June 24, 2020 ("**Exhibit 11**") 114:1–5, 11–13. Therefore, when "the ingredient panel … say[s] deboned chicken, for example, [it] can include both fresh and raw," as the front and back of many diets' packaging contains descriptors stating the diet includes "fresh or raw" chicken. *Id.* at 114:14–16; *see, e.g.*, Pl.'s Ex. 1 (front of 2016–2017 ACANA Heritage Free-Run Poultry bag stating chicken was "fresh or raw"). Again,

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 14 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Plaintiff's evidence only further underscores the need for ingredient-by-ingredient and lot-by-lot determinations within a single diet.

Further, whether a particular ingredient was added in a "fresh" state depends on the formula, which changed over time for the same diet. Ex. 4 ¶¶ 24–25; *Compare* Pl.'s Ex. 10 at 3 *to id.* at 7 (back of 2016 bag of ORIJEN Six Fish stating it is made with "1 1/3 lb **fresh, raw, or dried** whole Atlantic mackerel" and back of 2018 bag made with "3 lb **fresh or raw** whole wild mackerel") (emphases added); *compare* Pl.'s Ex. 1 at 2 *to id.* at 3 (front, top left of 2016–2017 bag of ACANA Free-Run Poultry stating chicken, turkey, eggs, vegetables, and fruit were "**Fresh or Raw**" and front, top right of 2018 bag stating same ingredients were "**delivered fresh daily**") (emphases added). Thus, whether the bags omitted the inclusion of non-fresh ingredients depends on the formula, which changed over time as reflected by the packaging. None of these inquiries can be established by common evidence applicable to an entire putative class.

Plaintiff also claims that Champion "routinely uses expired ingredients in the Dog Food." Mot. at 7.  The record evidence does not support this, but the opposite. What Plaintiff calls "expired" ingredients are merely ingredients that exceeded a best-used-by-date from the supplier. Ex. 4 ¶ 43. Champion employs quality control procedures to make sure it is safe to use these ingredients.  *Id.* ¶ 44. Use of such ingredients is not "routine," but is infrequent. *Id.* ¶ 45. Even then, in those few instances when expired ingredients are used, it is almost always dried ingredients, not fresh or raw. *Id.* Plaintiff cherry-picks two documents to support her assertion that Champion "routinely uses expired ingredients." Mot. at 7. The first is a February 2015 (preceding the class period) scientific study from Champion's Research & Innovation department that used sensory evaluations to determine the storage life of certain ingredients, and the second is mere anecdotal evidence from one laboratory shift report in September 2016. *Id.* (citing Pl.'s Exs. 21, 22). Neither amount to the common evidence Plaintiff needs to meet her burden.

As to "regrinds," this is a term Champion coined for the common manufacturing practice of reworking product that may have been unused or rejected from a prior production run into a

new production run; often this includes misshapen or unformed kibble.  Ex. 4 ¶ 37; Ex. 5 ¶ 20. Regrinds of finished kibble typically did not displace fresh or raw, but only dried ingredients. Ex. 4 ¶¶ 39, 41; Ex. 5 ¶ 22. Critically, determining whether regrinds were used in a production lot is yet another issue that requires a lot-by-lot analysis, as many production runs have no regrinds of any type. *See* Ex. 10 at 59:24–60:5 (a lot numbered 01011250 had no regrinds at all); *see also* Ex. 4 ¶ 39; Ex. 5 ¶ 21. Plaintiff argues that at DogStar "regrinds were used more often than not in manufacturing its Dog Food," Mot. at 7, but this is a misstatement of testimony provided by Champion's Kitchen Manager. He testified that DogStar used a formula allowing for regrinds more often than a formula that did not, and when asked "Do most batches [lots] contain regrinds?," he responded, "[A] lot do, but I wouldn't say most." Pl.'s Ex. 24 at 73:4–15.

Champion also created a policy specifying that only certain diets can accept regrinds from certain other diets (requiring identical or very similar formulas), and only in small percentages, so that the ingredient and nutritional panels are not materially altered. Ex. 4 ¶¶ 39, 40; Ex. 11 at 126:1–18. Although Plaintiff points to a few instances where the amount of regrinds in a lot exceeded Champion's internal policy, *see* Mot. at 7–8 (citing Pl.'s Ex. 23), this was a rare event, and in any event, whether this occurred would require a lot-by-lot analysis. Ex. 11 at 126:19–25 (explaining this occurs "[f]rom time to time"). These episodic production occurrences with no demonstrated impact on nutrition do not create a common issue, much less one that predominates.

Plaintiff's evidence demonstrates that Champion's allegedly deceptive conduct was anything but "uniform," and whether an omission occurred necessitates a bag-by-bag and/or lot-by-lot analysis.

### 2.	The "non-regional" omission requires a bag-by-bag and/or lot-by-lot review of ingredients.

Similarly, whether ingredients were "regional" or "regionally sourced" varies among diets and even within lots of the same diet, Ex. 4 ¶¶ 47–53, in part because "regional" is an inherently relative and subjective term.  *See Song v. Champion Petfoods USA, Inc.*, No. 18-cv-3205, 2020 WL 7624861, at *7 (D. Minn. Dec. 22, 2020) (finding "[i]t is farfetched to suggest that a reasonable

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 16 - NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

consumer would read this … as a guarantee that all of the ingredients … came from a regional source (whatever 'regional' might mean).").

Since Plaintiff's liability theory depends on Champion not disclosing that ingredients could be sourced far from the kitchen, Mot. 8–9, a bag-by-bag analysis is required as many class members would have bought Champion diets that show ingredients' sourcing locations, and thus be aware that "regional" does not mean "only from America" or "from Kentucky" as Plaintiff seems to imply.  This context is critical, as for example, the 2014 DogStar ACANA Lamb & Apple package states on the front that the lamb is from "North Island, New Zealand," and the 2016 package states the lamb is "[g]rass-fed on Kentucky and **New Zealand** ranches." Ex. A to Ogbonna Decl.; Pl.'s Ex. 4 at 2 (back) (emphasis added). The ACANA Wild Atlantic and ORIJEN Six Fish packaging tell consumers the saltwater fish is from New England, Pl.'s Exs. 9, 10, and the ACANA Grassland packaging states the rainbow trout was sourced in Soda Springs, Idaho and quail was sourced in Columbia, South Carolina. Pl.'s Ex. 7. The fact finder would have to review the packaging of each diet to determine whether ingredient sources on the label constitute a "non-regional" disclosure, and in turn, whether Champion made a material omission. This is not susceptible to common evidence, especially for classes that had label changes over time to reflect supplier changes. *See, e.g.*, Pl.'s Exs. 2, 4 (front of 2016–2017 ACANA Red Meat and ACANA Pork & Squash labels, respectively, stating Yorkshire pork was from Rockfield, Kentucky and front of 2018 labels stating Yorkshire pork was from Fannettsburg, Pennsylvania.).

Plaintiff relies on her exhibit 20, which is a spreadsheet of prospective ingredient suppliers for DogStar kitchen created in early 2015, about nine months before production started. *See* Mot. at 7, 8, 26 (citing Pl.'s Ex. 20). In any event, the spreadsheet lists 42 suppliers located 500 miles or less from DogStar, thereby demonstrating that many ingredients were sourced "regionally" (if one were to arbitrarily limit the phrase to that distance). *See* Pl.'s Ex. 20. Notably, Champion's packaging does not define or limit the word "regional" to a certain distance or location.  Ogbonna Decl. ¶ 41. Plaintiff's exhibit 20 also shows that many ingredients have more than one supplier.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 17 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

For example, Champion sources "beef meat and organs" from a supplier in Kentucky (which Plaintiff may perceive as "regional"), as well as from suppliers in Nebraska located about 800 miles from DogStar (which Plaintiff may or may not perceive as "regional"). Pl.'s Ex. 20. Similarly, Champion sources "lamb meat" from a supplier in Kentucky and another supplier in New Zealand. *Id*. This spreadsheet reflects that some production lots of Champion diets made with beef or lamb could contain meat that was sourced from within Kentucky, while other production lots of the same diet could contain beef or lamb that was sourced hundreds or even thousands of miles from Kentucky. Therefore, a lot-by-lot determination within each proposed class would need to be made to (1) determine a given ingredient's source, (2) determine if that source is "regional," (3) determine if and how the bag's label described the source of the ingredient and various other "regional" statements, and (4) determine if there was a material omission.

Plaintiff also argues that "images of 'Featured Farmers'" on Champion's labels "conceal [its] practice[]" of "purchas[ing] a majority of its various meats from non-regional suppliers." Mot. at 8. Plaintiff acknowledges that these are photos of real Champion supply partners. *Id.* That said, Plaintiff contends that Champion "purchased a minute amount of its advertised … chicken, beef, and lamb from its 'Featured Farmers'" and one featured farmer worked land owned by a conglomerate (which has no bearing on whether the ingredient is regional in any event). *Id*. at 8–9. However, Champion never identifies any of its photographed partners as the exclusive supplier of any ingredient, namely because Champion could purchase all of a Featured Farmer's crop or stock that year and still need to purchase from other farmers to meet demand, and the featured suppliers varied by diet and over time within each diet. *See, e.g.*, Pl.'s Ex. 6. For Rule 23 purposes, whether featured farmers owned their own land, what quantity of ingredients they supplied, and how representative they were of suppliers also necessitates a bag-by-bag analysis.

Finally, Plaintiff takes an internal document out of context to claim that Champion "considered changing this [regional] definition [] as we have outgrown our ability to source from our local region." Mot. at 9 (quoting Pl.'s Ex. 32). But in contorting Champion's language, Plaintiff

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 18 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

omits critical sentences from this April 2018 management presentation underscoring that whether

ingredients are regional depends on the particular ingredients advertised on a particular bag:

> **the [regional] term still applies to our fresh ingredients which we focus on keeping at high percentages in our diets** as these ingredients are fantastic quality and perform very well nutritionally and for palatability… **The total combination of regional ingredients in most of our foods would be approximately 50%, with some formulas exceeding this depending on the primary ingredients**.

Pl.'s Ex. 32 at -07 (emphases added).

Once again, Plaintiff's evidence demonstrates that Champion did not "uniformly" use "non-regional" ingredients that were not already disclosed on the labeling, and to determine where it did use these ingredients requires a lot-by-lot analysis that is not susceptible to common proof.

Thus, Plaintiff cannot establish through common evidence that Champion committed an unfair or deceptive act in violation of the WCPA. Plaintiff's citation to *White* offers no support. *See* Mot. at 19 (citing *White v. Symetra Assigned Benefits Serv. Co.*, No. 20-1866 MJP, 2022 WL 3092849 (W.D. Wash. Aug. 3, 2022)). In *White*, the court found the same "language was prevalent among [d]efendants' marketing materials, its own website, and in templates and call scripts [and the] [p]laintiffs allege that these misrepresentations also concealed [d]efendants' misuse of class members' confidential information, along with [d]efendants' own profit incentives." *Id*. at *10. Unlike *White*, where uniform language concealed omissions, Plaintiff's Motion highlights her contentions as to how varying statements on Champion's labels "concealed," "bolstered," or "reinforced" the alleged omissions. *See, e.g.,* Mot. at 4 ("Further concealing the Omissions, CPF's misleading Packaging Claims are its core marketing mission").[7] Indeed, Plaintiff's Motion underscores how closely the alleged omissions are intertwined with Champion's Packaging Claims

---

[7] *See also* Mot. at 8 (arguing the "'fresh' promise [] contributes to the misleading nature of CPF's failure to disclose the … use of non-fresh ingredients"), *id.* at 9 (arguing the "'regional' packaging claim renders CPF's failure to disclose the routine use of non-regional ingredients in the Dog Food misleading and deceptive"); *id.* ("consumers … believe 'Biologically Appropriate' Dog Food would not contain heavy metals based on the Omissions and related Packaging Claims"); *id.* at 10 ("Given the undisclosed presence or material risk of heavy metals, the promise of 'delivering nutrients naturally' is also misleading"); *id*. at 19 ("the Omissions were misleading and were contradicted by the packaging claims").

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 19 - NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

that varied significantly among diets and even within a single diet. *See* n. 7. Consequently, Plaintiff

cannot establish that common issues predominate as to the non-regional omissions.

### 3.    Plaintiff's heavy metals evidence raise individualized issues.

Champion has never stated on its bags or elsewhere that its food is heavy metal-free or any

words to that effect. Ogbonna Decl. ¶ 44. Heavy metals are present in the environment and

naturally occurring in many of the ingredients that Champion uses.[8]  Ex. 6 at 4–8, 40. *See id.* at

11–13; Ex. 8. Plaintiff was "aware that heavy metals are naturally found in foods."[9]  Ex. 7 at

68:18–25. This information is widely available on the internet, such as through Champion's White

Paper, the FDA, the Clean Label Project, and other publicly available sources as even Plaintiff's

proffered expert Mr. Silverman acknowledged.[10]  Although Plaintiff on one hand argues that the

theory of liability is premised on the mere presence, or risk thereof, of even one part per billion of

a heavy metal, Plaintiff's Motion makes clear that her heavy metals case at trial involves factual

context that introduces individualized issues as to heavy metals, as explained below.

---

[8] Plaintiff takes deposition testimony out of context to argue that a Champion employee was not aware of heavy metals being present in Champion's dog food and its ingredients. Mot. at 9 (citing Pl.'s Ex. 34). When asked if he "ha[d] any expectation of heavy metals being in Champion pet food products," he responded, "I have an expectation that because they naturally occur in the environment, and we buy ingredients that are grown from the environment, that they naturally occur in those ingredients," thus demonstrating his awareness. Dep. of K. Arnold (**"Exhibit 12"**) at 15:10–17.

[9] The citation to Plaintiff's deposition testimony on page 9 of the Motion does not support the argument that Plaintiff was unaware of heavy metals in Champion's food; it simply states she stopped buying the food because she saw the *Reitman* lawsuit on Facebook, which she later joined as a Named Plaintiff. Mot. at 9 (citing Pl.'s Ex. 35 at 48:1–17).

[10] Plaintiff admits that Champion published online a White Paper discussing the presence of heavy metals in the environment and Champion's dog foods. Mot. at 9 (citing Pl.'s Ex. 33). The FDA and the Clean Label Project have also provided similar information to the public. Ex. 8; Am. Compl. ¶ 88 n.26. And, Plaintiff's expert Mr. Silverman concedes that consumers have been "frequently exposed" to "many media reports" on heavy metals. Dkt. 108-1 at ¶¶ 151, 195; *see id.* ¶¶ 149, 150, 152–153, 155–158. Plaintiff references some recent action by the FDA as to heavy metals in human food, but whether the FDA has requested additional funding to further this outreach is of no consequence. Mot. at 9 (citing Pl.'s Ex. 36). Where information is disclosed or is "easily discoverable" by the consumer on the internet, there is no violation of the WCPA based on a purported omission. *Cole v. Keystone RV Co.*, No. C18-5182 TSZ, 2021 WL 3111452, at *4 (W.D. Wash. July 22, 2021), *aff'd sub nom.*, No. 21-35701, 2022 WL 4234958 (9th Cir. Sept. 14, 2022); *AVH & BJ Holdings 2, LLC v. LaClare Invs., LLC*, No. 51001-4-II, 2019 WL 1049521, at *13 (Mar. 5, 2019); *Steele v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1226, 1234 (W.D. Wash. Mar. 24, 2009). As Champion argued in its Rule 56 motion summary judgment should be granted as to the WCPA heavy metals omissions claims on these grounds; but for Rule 23 purposes, the widespread availability of information concerning heavy metals in food generates individualized issues as to causality. *See infra* at 24–27.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 20 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Plaintiff first argues that what makes the non-disclosure of heavy metals misleading are the "Biologically Appropriate," "fresh," "regional," and "delivering nutrients naturally" statements, all of which varied over time and by diet in the context provided on the bags, and thus she runs into the same individualized issues as did the *Reitman* plaintiffs. Mot. at 9–10.

Next, Plaintiff contends that Champion "failed to prevent or at least reduce the inclusion of heavy metals, which [Champion] could have achieved by … using only fresh ingredients with non-detectable amounts of heavy metals." Mot. at 10. But Plaintiff's focus on individual ingredients presents quintessential individual issues. For example, Plaintiff's exhibit 39 shows that one sample of deboned chicken contained nondetectable amounts of cadmium, lead, mercury, and arsenic, and one sample of lamb meat contained nondetectable amounts of cadmium, mercury, and arsenic, but 0.012 ppm of lead. *See* Pl. Ex. 39. Yet, while Plaintiff claims to only be concerned with the presence of heavy metals at any level (*see, e.g.,* Mot. at 10), she relies on a single sample of spray-dried herring that had 0.654 ppm of mercury because that level "exceed[s]" the NRC/FDA's MTL for mercury. *Id.* (citing Pl.'s Ex. 40). In focusing on ingredients' heavy metals contents, Plaintiff underscores that an analysis of the various ingredients is required, given the inevitable variability in test results that would ensue.[11]

Third, Plaintiff argues that Champion "does not take its own heavy metals testing schedules seriously" because it did not test several diets for a couple of years (supported by evidence from years before the class period begins). Mot. at 10 (citing Pl.'s Ex. 41). But whether Champion's testing adhered to its schedule will again depend on the diet and the year, as some diets and ingredients were tested more often than others. Ex. 5 ¶¶ 14–16. As a result, the examination of the adequacy of testing implicates individual issues and is not based on common evidence.

---

[11] Another example of Plaintiff's emphasis on ingredient selection appears in her argument that Champion was "well-aware that fresh, regional ingredients would have not have heavy metals." Mot. at 8; *see also id.* 9–10. Yet such a notion defies logic. A fish caught in a lake located near DogStar kitchen, for example, could be fresh and regional while also containing detectable levels of heavy metals. Whether food contains detectable amounts of heavy metals has nothing to do with whether that food is fresh or regional.

Finally, Plaintiff argues that "zero heavy metals is a key attribute [of] the related Packaging Claims." Mot. at 10 (citing Pl.'s Ex. 13). This is not supported by the cited exhibit. Plaintiff's exhibit 13 is an early 2018 internal draft strategic plan from Champion's marketing department that brain-stormed about whether Champion some years in the future could have "no … heavy metals" in certain, but not all, ACANA diets. *Id.* Not only was this document never shown to any class members, but this aspirational idea was also not pursued by Champion because it is scientifically impossible to remove or extract heavy metals from food. Ex. 3 at 191:16–193:13; 202:9–16. Plaintiff has no evidence that suggests it is possible to create dog food free of heavy metals, and her citation to this evidence does not demonstrate predominance of common issues.

## B.   Materiality Cannot be Established through Common Evidence.

Plaintiff cites to *Young* to argue that she "does not need to show … that the … omission is material" to establish her WCPA claim. Mot. at 19 (citing *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn. 2d 310, 318 (2020)). *Young* found that "[w]hile materiality might be relevant as a matter of fact in some cases, it is not categorically required as a matter of law in all" such as a "claim under the Washington [W]CPA [] predicated upon a *per se* violation of statute," which is not at issue here. *Young*, 196 Wn. 2d at 314, n.1. The court went on to find that materiality is "sufficient" but not "necessary" for an affirmative misrepresentation, whereas "an omission of fact known to a seller [must be] material," and clarified the difference between "an omitted fact [from] a positive misrepresentation." *Id.* at 318–19. Thus, Plaintiff must establish the alleged omissions were material. *See Cole*, 2021 WL 3111452, at *4 ("The 'knowing failure to reveal something of material importance is 'deceptive' within the [W]CPA.' '[Washington] cases establish a general duty on the part of a seller to disclose facts material to a transaction when the facts are known to the seller but not easily discoverable by the buyer.'") (internal citations omitted). For this reason, elsewhere in Plaintiff's Motion, she attempts to establish the materiality of the alleged omissions, *see, e.g.,* Mot. at 3, 5–6, 27. But for the same reasons that individualized issues predominate over the element of deception, Plaintiff cannot prove materiality through common evidence.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 22 - NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

In an attempt to establish materiality, Plaintiff relies on Mr. Boedeker's conjoint surveys and Expectations Survey.[12] *See* Mot. at 27 ("As to materiality, the surveys demonstrate that a majority of respondents did not expect [Champion's] Dog Food to contain heavy metals or the inclusion of non-fresh or non-regional ingredients."). However, Mr. Boedeker's Omissions Surveys begin by asking respondents to "[a]ssume you are purchasing a 25-pound bag of ***your favorite dry dog food***." *See* Dkt. 106-1 at ¶ 134 (emphasis added). Thus, it clear from the start that the survey is not testing any Champion product and its results are not relevant to purchasers of ***Champion's*** dog food. After being prompted to think about any brand of dog food they choose, respondents are provided with lawyer-created definitions of "attributes," such as "expired ingredients," "heavy metals" and "regrinds," *id.* at ¶ 136, but these definitions do not align with the facts of this case, and more importantly, fail to explain that none of these "attributes" are dangerous or otherwise unsafe or unhealthy for pets. Moreover, Boedeker does not claim that his Omissions Surveys were performed for the purpose of testing materiality and offers no opinion that materiality is (or even can be) demonstrated through those surveys. Rather, he opines that his Expectations Survey does.

With respect to the Expectations Survey, part one (Dkt. 106-1 at 429–435, 450–456) and part two (*id.* at 436–441, 457–462) of the survey test affirmative statements, and Mr. Boedeker ignores fundamental principles of survey research by failing to use a control group to establish a baseline of how respondents interpret those statements on Champion's packaging. Dkt. 106-3 at 35:1–6. Without such a baseline, it is impossible to know what statements (if any) on Champion's packaging impact consumer understandings, and thus, without a control, the survey results are

---

[12] Plaintiff also asserts that she has "elicited expert testimony as to both uniformity and materiality" by relying on a single sentence from Mr. Silverman, a former advertising executive, that Champion "uniformly failed to disclose the presence of heavy metals, and non-fresh, non-regional ingredients." Mot. at 26 (quoting Pl.'s Ex. 12). Yet there are only two sentences in his entire expert report that address Champion's alleged "omissions," Pl.'s Ex. 12 ¶¶ 199, 202, and Mr. Silverman provides these opinions without conducting a single consumer survey, interview, or focus group, and without reading the deposition transcript of Plaintiff in this case or the transcripts of plaintiffs in any related case. Dkt. 108-1 at Ex. A; Dkt. 108-2 at 29:21–25, 30:7–10, 48:5–10, 117:14–20, 139:6–11. Moreover, an expert is not required for the finder of fact to determine whether Champion's labels provided "uniform" statements. Thus, Mr. Silverman's opinions are not helpful, are useless, and do not constitute proof of common evidence sufficient to meet Plaintiff's burden under Rule 23(b)(3).

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 23 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

irrelevant. *See, e.g.*, *J.T. Colby & Co. v. Apple Inc.*, No. 11-CV-4060, 2013 WL 1903883, at *22 (S.D.N.Y. May 8, 2013), *aff'd*, 586 F. App'x 8 (2d Cir. 2014) (finding a survey inadmissible due to a lack of control group, stating "[i]n order to offer sound results, most surveys must employ an adequate control."). The third, and final, part of the Expectations Survey, not only failed to use a control group, but it never tests omissions, but rather, it tests the impact of statements that are not at issue in this case (*e.g.*, This product "does not contain regrinds."). Dkt. 106-1 at 442–443, 463–464. Boedeker offers no reason to believe that the impact of these statements on purchase intent implies that correcting the alleged omissions (*e.g.*, "This product contains regrinds.") would have a significant impact on consumers' purchase intent. This is a leap made entirely by Plaintiff. It is based on an inappropriate extrapolation of the results of Boedeker's survey, and neither Plaintiff nor Boedeker offer support for the validity of such extrapolation because none exists.  In sum, Boedeker's Expectation Survey ***does not test any of the omissions at issue in this case*** and therefore does not (and cannot) provide common evidence of the purported materiality of Champion's alleged omissions.

In short, Plaintiff cannot meet her burden to prove materiality with common evidence.

### C.    Causation Requires Individualized Determinations.

The ten proposed classes cannot be certified for the additional reason that Plaintiff cannot establish that any purported deception by Champion proximately caused Plaintiff's injuries. *Panag v. Farmers Ins. Co. of Washington*, 166 Wn. 2d 27, 57 (2009) ("Washington requires a private [W]CPA plaintiff to establish the deceptive act caused injury"). Plaintiff argues that "causation will [] not create overwhelming individual questions" because there is a "presumption of reliance" in WCPA omissions cases based in fraud. Mot. at 21 (quoting *Reichert v. Keefe Commissary Network, LLC*, 331 F.R.D. 541, 556 (W.D. Wash. 2019)).  While "the Washington Supreme Court has never affirmed a presumption of reliance in consumer fraud cases involving material omissions," to the extent that district courts have adopted a "presumption of reliance," it is rebuttable, where, like here, consumers were not exposed to uniform representations or disclosures

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 24 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

and some consumers were aware of the alleged non-disclosures.[13] *Blough v. Shea Homes, Inc.*, No. 2:12-cv-01493 RSM, 2014 WL 3694231, at *13–14 (W.D. Wash. July 23, 2014).

In *Blough*, the court found that "advancing an omissions-based theory of liability does not … render common questions predominant." *Id.* at *13. There, the plaintiffs' operative complaint primarily asserted a theory of "deceptive advertising about the high quality of [defendant's] homes" and where the plaintiffs alleged omissions, they were "largely the mirror image of [the plaintiffs'] alleged affirmative misrepresentations." *Id.* The court found the defendant could "rebut the presumption of reliance for individual class members by showing, for instance, that [plaintiffs] purchased their homes despite knowledge of known defects," and in that case, "discovery [] revealed substantial variations in homeowners' knowledge of defects prior to purchase." *Id.* at *14. Accordingly, the court found the plaintiffs' "presumption of reliance does not alter the predominance of individualized inquiries into causation over common questions. Under either an affirmative misrepresentations or an omissions-based theory of causation, the variations among the purchase experiences, knowledge, and motivations of class members are such that an unmanageable number of mini-trials would result." *Id.*

Like in the *Blough* case, Plaintiff generally alleges in her Second Amended Complaint that Champion's packaging statements or omissions misled consumers to believe they were purchasing "premium" and "high quality" dog food. Dkt. 46 ¶ 28. However, as noted above, some class members would be aware of the presence, or risk of the presence, of heavy metals in Champion's dog food and its ingredients, such as fish, but purchase the product anyway. *See supra* n. 10. For example, Plaintiff testified she was aware that seafood could contain mercury and she was "aware

---

[13] The "presumption of reliance" does not apply here given Plaintiff's constant discussion of Champion's Packaging Claims. *See supra* at 2, n.7. "Plaintiff's claims rely on a mixture of affirmative misrepresentations *and* omissions. The presumption of reliance does not apply in these situations." *Weidenhamer v. Expedia, Inc.*, No. C14-1239RAJ, 2015 WL 7157282, at *13 (W.D. Wash. Nov. 13, 2015) (denying class certification because "individual issues of reliance—and therefore proximate cause—predominate."); *see also Geier v. M-Qube Inc.*, 314 F.R.D. 692, 700 (W.D. Wash. 2016) ("The conduct relevant to the causation analysis is not 'common as to all of the class members,' and thus there is no method for plaintiff to establish causation on a classwide-basis. While there may be a presumption of reliance in omission-based [W]CPA claims, claims based in part on affirmative misrepresentations receive no such presumption.").

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 25 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

that heavy metals are naturally found in foods." Ex. 7 at 68:18–25. In addition, a significant number of class members, by reading the bags, would be able to see that non-fresh ingredients are included in the food, such as raw, dried, dehydrated, and freeze-dried ingredients, and that "regional" does not mean "only from America" or "from Kentucky," as Plaintiff seems to imply. *Id.* at 57:7–9, 93:19–24, 97:6–99:17, 100:4–21, 101:2–4, 108:10–16, 116:17–23.

Further, depending on the bag purchased, consumers would be presented with different information about that diet's ingredients' sources and the form in which those ingredients were included in the diet's formula.  This is especially the case for long-term and multi-diet purchasers of diets, such as Plaintiff, who purchased 2014 NorthStar ACANA Lamb & Apple packaging stating the lamb is sourced from New Zealand and ingredients were "Never-Frozen." Ogbonna Decl. Ex. A.  As a result, there was not a "class-wide policy or practice of non-disclosure" as in *Torres*, a case cited by Plaintiff. *See* Mot. at 21 (quoting *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016)). Nor is this case like *Reichert*, another case Plaintiff cites, Mot. at 21, which found that common questions predominated because the "[d]efendants have not argued that some class members received additional warnings … that may have impacted their use of a release card." *Reichert*, 331 F.R.D. at 556. Here, because the success of Plaintiff's omission theory depends on what information was provided on Champion's packaging, which changed over time for each diet, her claim is incapable of being certified. *Kelley v. Microsoft Corp.*, 395 F. App'x 431, 433 (9th Cir. 2010) (affirming the class was not entitled to a presumption of reliance because the "class' claims are [] not 'base[d] ... only on what [Microsoft allegedly] did not disclose,' but rather 'as much on what [was said] as what [wa]s purportedly [left out]'" because, for example, "the failure to disclose [certain] information [was] relevant only insofar as Microsoft also represented that Vista Capable PCs were in fact capable of running a version of Vista") (quoting *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 667 (9th Cir. 2004)).

Thus, even if a "presumption of reliance" applied (it should not), *see supra* n.13, the foregoing individualized inquiries can overcome the "presumption of reliance" and preclude a

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 26 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

finding that common issues predominate the causation element. *See G.G. v. Valve Corp.*, 579 F. Supp. 3d 1224, 1234–35 (W.D. Wash. 2022) (granting summary judgment and denying class certification as moot, finding defendant rebutted "presumption of reliance" where plaintiffs alleged violation of WCPA based on omissions because there was no evidence that plaintiffs would have read disclosures had defendant made them).

Because common issues do not predominate as to causation, certification should be denied.

**D.**    **The Elements of Plaintiff's Unjust Enrichment Claim Cannot Be Established Through Common Evidence.**

As Plaintiff acknowledges, an unjust enrichment claim requires a determination of whether the "circumstances make it unjust for the defendant to retain the benefit without payment." Mot. at 22; *see W.H. Hughes, Jr., Co. v. Day*, 162 Wn. App. 1069, at *1 (2011). Plaintiff has not met her burden to show that whether it was *unjust* for Champion to retain the monies it earned from the sales of its products to various class members can be proven through common evidence, especially when many consumers received the benefit of the bargain: dog food made with fresh and regional ingredients that was appropriate for their dogs to consume, and that over a long period of time supplied nutrition to them. Instead, she sweepingly asserts that this element of her unjust enrichment claim is a "common legal question" that exists "given these misrepresentations and omissions." Mot. at 22. Although Plaintiff professes to only seek to certify claims based on Champion's alleged omissions, once again, the Motion makes clear that Plaintiff's omissions claims are inextricably intertwined with Champion's alleged misrepresentations.

Moreover, "[b]oth Plaintiff['s] [W]CPA and unjust enrichment claims require a showing that a plaintiff's injury was proximately caused by defendant's misrepresentation." *Kelley v. Microsoft Corp.*, No. C07-475 MJP, 2011 WL 13353905, at *3 (W.D. Wash. May 24, 2011); *see Weidenhamer*, 2015 WL 7157282, at *12 ("courts in this district have suggested there is a causation-like inquiry for certain kinds of unjust enrichment claims"). This by itself implicates individualized issues, especially with regards to what Plaintiff and consumers were aware of or exposed to prior to making their purchases. This is because "[d]etermining if the benefit conferred

was unjust requires knowing whether [the defendant] 'actually deceived' consumers [and this determination of] causation requires a fact-intensive, individual inquiry into the motivations of each consumer." *Kelley*, 2011 WL 13353905, at *3 (denying certification of WCPA and unjust enrichment claims due to individualized issues of causation); *Weidenhamer*, 2015 WL 7157282, at *12 (same). Therefore, Plaintiff's unjust enrichment claim should not be certified either.

### E. The Alleged Damages Cannot Be Measured Across Classes.

While individualized determinations of each class member's damages will not preclude class certification, these calculations must be derived from a damages model that fits the facts of the case. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). In other words, "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory," *id*., and where, like here, a plaintiff cannot prove damages on a class-wide basis, then individual issues "inevitably overwhelm questions common to the class," and preclude a finding of predominance. *Id*. at 34.

Mr. Boedeker's work and his resulting opinions do not fit Plaintiff's theory of liability for several reasons. ***First***, his conjoint-based Omissions Surveys fail to test any Champion diet at issue in this case. The Omissions Surveys command respondents to "[a]ssume [they] are purchasing a 25-pound bag of [their] **favorite** dry dog food." *See* Dkt. 106-1 at ¶ 134 (emphasis added). By focusing respondents on any product of their choosing, the Omissions Surveys test products that have nothing to do with Plaintiff's claims about Champion's dog food.  ***Second***, Mr. Boedeker fails to show respondents Champion's packaging during the Omissions Surveys, *id*. ¶ 135, and without this, respondents cannot determine whether Champion's packaging provided information or context that could clarify or disclose the tested omissions or otherwise impact the survey answers. *See Tran v. Sioux Honey Ass'n, Coop.*, 471 F. Supp. 3d 1019, 1029 (C.D. Cal. 2020) (finding "the raw Survey data and the Maronick Report offer no foundation upon which a factfinder could conclude that a reasonable consumer would be misled by Sioux Honey's labeling."). Boedeker's failure to provide consumers with the opportunity to review Champion's

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 28 - NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

packaging, to determine what it says and does not say, simply does not "fit" Plaintiff's theory in this false advertising case. **Finally**, the Omissions Surveys ask respondents only about the omissions of regrinds, expired ingredients, and heavy metals, but do not test other aspects of Plaintiff's omissions theories in this case, including the use or inclusion of frozen or other forms of non-fresh ingredients, and non-regional ingredients. Dkt. 106-1 at ¶ 136 (chart of attributes); ¶ 137 (Figs. 8 and 9); *see* Mot. at 24 (same).

Consequently, Mr. Boedeker's Omissions Surveys cannot establish predominance.[14] In this district,

> [i]t [is] not manifest error for the Court to conclude, like in *Kelley v. Microsoft Corp.*, No. C07-0475 MJP, 2009 WL 413509, at *9 (W.D. Wash. Feb. 18, 2009), certification is not warranted due to failure to establish predominance when the plaintiff does not put forward a proposed calculation that would show the [conduct] alleged, rather than other factors, drove the price/demand inflation. While the question of whether the defendant received a benefit could predominate over the injuries to multiple plaintiffs, the Court cannot stand on that conclusion when the plaintiff does not put forward a calculation method that isolated sales which would have been made without the challenged conduct.

*Converse v. Vizio, Inc.*, No. C17-5897 BHS, 2020 WL 2922490, at *4 (W.D. Wash. June 3, 2020) (denying motion to reconsider denial of class certification).

Because Boedeker's damages model is not "consistent with" Plaintiffs' theory of liability, it cannot be used to determine class-wide damages (if any). *Comcast*, 569 U.S. at 35; *In re Fluidmaster, Inc. Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *57 (N.D. Ill. Mar. 31, 2017) (declining to certify classes where their experts' "price premium damages model does not measure damages attributable to their liability theory"). On this basis alone, Plaintiff's Motion should be denied.

---

[14] Plaintiff's nod to the *Zarinebaf* court's acceptance of Mr. Boedeker's conjoint surveys at the *Daubert* stage is of limited use. Mot. at 24–25. The *Zarinebaf* plaintiffs' claims were based on Champion's affirmative misrepresentations as well as omissions and included BPA and pentobarbital claims that are not at issue here. *Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2022 WL 910638, *2–5 (N.D. Ill. Mar. 29, 2022).

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 29 - NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

## VI.    THE INJUNCTIVE RELIEF CLASS SHOULD NOT BE CERTIFIED

Just as in *Reitman*, Plaintiff's evidence demonstrates that Champion's conduct and packaging statements were not uniform and thus do not "apply generally to [each] class." Fed. R. Civ. P. 23(b)(2); *Reitman*, 2019 WL 7169792, at *14 (finding "the request to certify under Rule 23(b)(2) is inappropriate because Plaintiffs have not shown that Defendants have 'acted or refused to act on grounds that apply generally to the class, so that final injunctive relief ... is appropriate respecting the class as a whole' [and] [because the] bags of Dog Food [differ,] an injunction 'to prohibit the future sale of adulterated and misbranded dog food' is not appropriate."). In addition, because Plaintiff has not alleged that she intends to purchase Champion's dog food in the future and is now aware of the challenged labeling, she has not alleged a real risk of future injury and thus is unable to obtain injunctive relief because she cannot establish that "actual and substantial injury" will result without an injunction. *Haunreiter v. Lewis Cnty. Democrat Cent. Comm.*, 4 Wn. App. 2d 1039, at *3–4 (2018) (affirming denial of injunction because conduct complained of "is a past harm that is not presently occurring or that will occur in the future … Therefore, [the plaintiff] has not demonstrated that he is currently suffering or will suffer substantial injury"). Finally, because Plaintiff primarily seeks monetary relief, her request for an injunctive relief class should be denied. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (holding "Rule 23(b)(2) certification is inappropriate where the primary relief sought is monetary" and district court did not abuse discretion in denying class certification); *Ballew v. Matrixx Initiatives, Inc.*, No. CV-07-267-RHW, 2008 WL 4831481, at *6 (E.D. Wash. Oct. 31, 2008) (denying motion for class certification because "the primary relief sought is damages, not declaratory or injunctive relief"). Thus, certification for injunctive relief should be denied.

## VII.    CONCLUSION

For all the foregoing reasons, the Motion should be denied.

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

DATED: January 9, 2023

CAIRNCROSS & HEMPELMANN, P.S.

/s/ Binah B. Yeung
Binah B. Yeung, WSBA No. 44065
Email: BYeung@cairncross.com
Jonathan D. Tebbs, WSBA No. 53861
Email: JTebbs@cairncross.com
524 Second Avenue, Suite 500
Seattle, WA 98104
Tel.: (206) 587-0700

WINSTON & STRAWN LLP

/s/ David A. Coulson
David A. Coulson*
Email: DCoulson@winston.com
Jared R. Kessler*
Email: JRKessler@winston.com
Elisa H. Baca*
Email: EBaca@winston.com
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131
Tel.: (305) 910-0500
*Admitted *pro hac vice*

***Attorneys for Defendants Champion Petfoods USA Inc. and Champion Petfoods LP***

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION - 31 -
NO. 2:18-CV-01578-TL

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308