1

2

3

4

5                           UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
6                                    AT SEATTLE

7    HOLLY RYDMAN, individually and
     on behalf of a class of similarly situated
8    individuals,

9                      Plaintiff,
                                                      C18-1578 TSZ
10          v.
                                                      ORDER
11   CHAMPION PETFOODS USA, INC.,
     et al.,
12
                       Defendants.
13

14          THIS MATTER comes before the Court on Defendants' motion for summary

15   judgment, docket no. 109, and Plaintiff's motion for class certification, docket no. 101.

16   Having reviewed all papers filed in support of, and in opposition to, the motions, the

17   Court enters the following Order.

18   **Background**

19          Plaintiff Holly Rydman, a Washington resident, representing a putative class of

20   similarly situated individuals, claims that she was misled by statements and omissions

21   concerning dog food produced by defendants Champion Petfoods USA, Inc. and

22   Champion Petfoods LP (together, "Champion"). In her Second Amended Complaint

23

("SAC"), docket no. 46, Plaintiff alleges that the dog food she purchased "contained and/or had a material risk of containing non-conforming ingredients and contaminants, such as: (1) Heavy Metals; (2) non-fresh ingredients; [and] (3) non-regional ingredients." SAC ¶ 12. As a result, Plaintiff contends the following statements found on Champion's packaging were misleading: (1) "Biologically Appropriate"; and (2) "Fresh Regional Ingredients." *Id.* ¶ 11.[1]

Plaintiff purchased Champion dog food between approximately December 2014 and February 2018 from a local Washington pet store. SAC ¶ 8; Resp. to Interrog. No. 3, Ex. 4 to Coulson Decl. (docket no. 110-4); Rydman Dep. at 10:17–19 & 45:6–11, Ex. 5 to Coulson Decl. (docket no. 110-5) [hereinafter "Pl.'s Dep."]. Plaintiff purchased the following Champion dog food diets: ORIJEN Six Fish, ACANA Singles Lamb & Apple, ACANA Singles Duck & Pear, ACANA Singles Pork & Squash, ACANA Regionals Grasslands, ACANA Regionals Meadowland, ACANA Regionals Wild Atlantic,

---

[1] Although the operative pleading also includes allegations regarding the phrases "Delivering Nutrients Naturally," "Nourish as Nature Intended," or "Ingredients We Love [From] People We Trust," in her response to Champion's motion for summary judgment, Plaintiff does not offer any analysis to support a claim that these packaging labels were false or misleading. The Court concludes, as a matter of law, that "Delivering Nutrients Naturally" is not false or misleading because Plaintiff's dogs did indeed ingest the Dog Food, and nothing in the record suggests that the food was delivered unnaturally or that the food did not nourish the dogs. The statements "Nourish as Nature Intended" and "Ingredients We Love [From] People We Trust" are non-actionable puffery. *See Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2019 WL 3555383, at *7 (N.D. Ill. July 30, 2019) ("'Nourish as nature intended' is too vague to be disproven—it seems impossible to draw conclusions about what, exactly, 'nature intends'—so it is nonactionable puffery."); *Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205, 2020 WL 7624861, at *10 (D. Minn. Dec. 22, 2020) ("The phrase 'nourish as nature intended' is non-actionable puffery—a phrase that is too vague to be proved or disproved. . . . Mother Nature cannot be deposed."); *Renfro v. Champion Petfood USA, Inc.*, 475 F. Supp. 3d 1242, 1247–48 (D. Col. 2020) ("'Ingredients We Love [From] People We Trust'— [is] puffery and thus not [an] actionable misrepresentation[ ]."). Champion's motion for summary judgment is GRANTED on all of Plaintiff's remaining claims as to these three statements.

ACANA Heritage Red Meat, ACANA Heritage Free-Run Poultry, and ACANA Heritage Freshwater Fish (collectively, the "Dog Food"). *See* Pl.'s Dep. at 47:3–17; Pl.'s Dep. at Ex. 7. Plaintiff makes no allegation that the consumption of Champion's Dog Food by Plaintiff's dogs resulted in illness or harm. *See* SAC ¶¶ 26–235; *see also* Poppenga Report at 39, Ex. 6 to Coulson Decl. (docket no. 110-6).

**A.**    **Statements on Champion's Packaging**

**1.**    **"Biologically Appropriate"**

The Dog Food packaging stated that the diet was "Biologically Appropriate" and displayed the following labels:



*See, e.g.*, Exs. A & B to Ogbonna Decl. (docket nos. 111-1 & 111-2). Plaintiff understood the phrase "Biologically Appropriate" to mean that the Dog Food "should be consumed, [was] meant to [be] consume[d by dogs], [was] safe for [dogs] to consume," and was "best for the dog to eat." Pl.'s Dep. at 70:17–22, 89:12–17. According to Champion, the Dog Food that Plaintiff purchased contained certain fresh ingredients, such as chicken, turkey, pork, eggs, fruits, and vegetables. Milam Decl. ¶ 13, Ex. 3 to Coulson Decl. (docket no. 110-3). Pursuant to the requirements of the Association of American Feed Control Officials ("AAFCO"), the back of every Champion package listed in a separate panel all ingredients of the dog food contained therein, in order of weight. Ogbonna Decl. ¶ 42 (docket no. 111). Plaintiff has testified that she read the ingredient panels before

purchasing various packages of the Dog Food. Pl.'s Dep. at 91:2–14, 104:1–3, & 110:8–10.

### 2.   **"Fresh Regional Ingredients"**

The front of every Dog Food bag at issue (with the exception of the three 2018 ACANA Singles bags) included a snowflake-shaped icon containing the letters "FD," which is accompanied by the phrase "freeze-dried." Exs. A–M, O, Q, & S–U to Ogbanna Decl. (docket nos. 111-1 – 111-13, 111-15, 111-17, & 111-19 – 111-21). Many bags at issue also stated how many, and which, ingredients were delivered either "fresh or raw." *See id.* at Exs. D, F, O, Q, & S–U. For example, the packages included labels, such as



*See, e.g.*, *id.* at Exs. D & T. Prior to purchasing the Dog Food, Plaintiff read the "fresh or raw" statements on the packaging. Pl.'s Dep. at 93:19–24, 96:14–20, 98:12–17, 105:7–10, 108:10–16, & 116:17–23. Plaintiff testified that she reviewed ingredients prior to purchasing because she "wanted to know exactly what was in the product." *Id.* at 91:8–11.

A panel on the back of each Dog Food bag disclosed the approximate amount, in pounds, of each "animal" ingredient as well as its form, *i.e.*, fresh, raw, dried, freeze-

dried, dehydrated, or oil. Exs. A–U to Ogbanna Decl. (docket nos. 111-1 – 111-21). The parties refer to this section of the packaging as "Meat Math." For example, the "Meat Math" on the 2016–17 ACANA Heritage Free-Run Poultry package stated that "THIS 13 LB PACKAGE OF ACANA IS MADE WITH OVER 7 ¾ LB OF FREE-RUN POULTRY AND EGG INGREDIENTS[.] Half are FRESH or RAW and loaded with goodness and taste, and half are DRIED or OILS that provide a strong and natural source of animal proteins and fats." Ex. A to Ogbanna Decl. (docket no. 111-1). As another example, the "Meat Math" panel on the 2017 ORIJEN Six Fish bag states, in part, "THIS 13 LB PACKAGE OF ORIJEN . . . IS MADE WITH OVER 11 LB OF FRESH, RAW OR DRIED FISH INGREDIENTS | 2/3 FRESH OR RAW + 1/3 DRIED." *Id.* at Ex. T (docket no. 111-20). Plaintiff read the "Meat Math" panels on the packages prior to purchasing the Dog Food. Pl.'s Dep. at 93:19–24 & 108:10–16.

On each bag that Plaintiff purchased, Champion also indicated that the Dog Food contained "regional" ingredients:





1   Ex. I to Ogbanna Decl. (docket no. 111-9); *see also id.* at Exs. A–U. The ingredients that

2   Champion displayed, however, were not sourced entirely in a particular area of the

3   United States, or even inside the United States. For example, Champion included the

4   following labels on some of its packaging:

5   Grass-fed on Kentucky and New Zealand ranches, our fresh or raw lamb arrives in WholePrey™ ratios

6   Ex. Q to Ogbanna Decl. (docket no. 111-17). Champion also told customers:

7   That's why we loaded ORIJEN SIX FISH with unmatched

8   inclusions of wild-caught fish — whisked to our kitchens
    from cold New England waters FRESH or RAW, in richly
    nourishing WholePrey™ ratios.

9   WILD-CAUGHT NEW ENGLAND FISH. DELIVERED FRESH OR RAW DAILY.

10  Ex. S to Ogbanna Decl. (docket no. 111-19).

11          Before purchasing the ORIJEN Six Fish products, Plaintiff read the "New England

12  Fish" statements, Pl.'s Dep. at 97:19–99:17, and during her deposition, she testified that

13  New England did not fall within her understanding of the word "Regional," *id.* at 101:2–

14  4. Rather, her understanding of "Regional" meant "in and around where the food is

15  produced," namely Kentucky. *Id.* at 90:20–23. As a specific example, in the context of

16  ORIJEN Six Fish, Plaintiff interpreted "regional wild-caught fish" as "fish that is caught

17  in a region that is located nearby where [the dog food] is produced." *Id.* at 90:20–23 &

18  99:25–100:3. Champion did not state on any of its packaging that 100% of each

19  ingredient, that every ingredient, or that all ingredients, are regional, and it did not define

20  the word "regional" with respect to a certain distance or location. *See* Exs. A–U to

21  Ogbanna Decl. (docket nos. 111-1 – 111-21).

22

23

ORDER - 6

1    **B.**    <u>**Heavy Metals**</u>

2           According to Champion's veterinary toxicology expert, Robert Poppenga, DVM,

3    Ph.D., nearly all foods, whether for humans or pets, contain some levels of heavy metals,

4    such as arsenic, cadmium, lead, and mercury. Poppenga Report at 8–20 & 40 (Opinion A)

5    (docket no. 110-6). According to Dr. Poppenga, heavy metals in Champion's Dog Food

6    are below the maximum tolerable limit set by the National Research Council of the

7    National Academies of Sciences and the U.S. Food and Drug Administration. *Id.* at 12–

8    13, 25, 27, & 40 (Opinion F). Plaintiff does not challenge this opinion. In addition,

9    Plaintiff has testified that she was aware that "seafood . . . could contain the heavy metal

10   of mercury" and that "heavy metals are naturally found in foods." Pl.'s Dep. at 68:18–25.

11   **C.**    <u>**This Litigation**</u>

12          Plaintiff's theory of the case is not that the alleged inclusion of heavy metals, non-

13   fresh ingredients, and/or non-regional ingredients harmed her dogs. Rather, Plaintiff

14   contends that she paid a premium price for the Dog Food because of Champion's alleged

15   misstatements and omissions. In support of her "overpayment" claim, Plaintiff offers

16   expert testimony from Stefan Boedeker, an economist and statistician, and Bruce

17   Silverman, a former marketing executive.[2]

18          Boedeker conducted five consumer surveys: an "expectations" survey and four

19   conjoint surveys. *See* Order at 5 (docket no. 144) [hereinafter the "Expert Order"]. The

20

21   _____

22   [2] The Court previously excluded the opinions of another expert, Gary Pusillo, Ph.D., as well as certain
     opinions offered by Silverman. *See* Order at 9–18 (docket no. 144).

23

"expectations" survey attempted to measure what a "reasonable consumer" would think about the statements on the Dog Food. In her motion for class certification, plaintiff summarized Boedecker's "expectations" survey results as follows:

| EXPECTATIONS SURVEY OF REASONABLE CONSUMERS | Orijen Diets | Acana Diets |
|---|---|---|
| **From the "Biologically Appropriate" statements on the Dog Food, consumers would expect that:** | | |
| The dog food shown does not contain undisclosed heavy metals. | 82.8% | 84.3% |
| The dog food shown only contains fresh ingredients, unless specifically stated otherwise on the packaging. | 89% | 83.9% |
| **From the "Fresh" statements on the Dog Food, consumers would expect that:** | | |
| The dog food shown contains only fresh ingredients unless specifically stated otherwise on the packaging. | 84.2% | 84.7% |
| The dog food shown does not contain any undisclosed expired ingredients. | 79.4% | 88.4% |
| The dog food shown does not contain any undisclosed reground dog food (dog food previously manufactured by this manufacturer but that did not meet its specifications for sale). | 78.5% | 76.9% |
| **From the "Regional" statements on the Dog Food, consumers would expect that:** | | |
| The dog food shown does not contain undisclosed imported ingredients. | 73.7% | 76.9% |
| Each ingredient in the dog food shown is from the region where the food is made unless specifically stated otherwise on the packaging. | 79.4% | 77.3% |

Pl.'s Mot. at 5–6 (docket no. 101 at 11–12); *see also* Boedecker's Report at 73–74 & 76–77, Ex. 18 to Peterson Decl. (docket no. 101-20). In contrast, Boedecker's conjoint surveys attempted to quantify the economic losses allegedly suffered as a result of the misstatements and omissions at issue.

Silverman has opined that, given the "Fresh" and "Regional" packaging statements, reasonable consumers would not expect non-fresh or non-regional ingredients

1  to be in the Dog Food. *See* Expert Order at 12. Silverman further opined that "[h]ad

2  Champion's packaging disclosed that its products contained and/or had a risk of

3  containing heavy metals, a material amount of ingredients that were not fresh, and/or a

4  material amount of ingredients that were not local or regional, such disclosures would

5  have adversely affected consumers' willingness to purchase the Champion Products." *Id.*

6  (quoting Silverman Report at ¶ 33(k), Ex. 1 to Coulson Decl. (docket no. 108-1)).

7          As putative class representative, Plaintiff seeks to certify ten different classes,

8  each correlated with one of the different kinds of dog food that she bought. Pl.'s Mot. at

9  11–12 (docket no. 101). Champion opposes certification of any class and also moves for

10  summary judgment. The Court first addresses Champion's motion for summary

11  judgment. The Court then turns to Plaintiff's motion for class certification.

12  **Discussion**

13  **I.      Summary Judgment**

14          The Court shall grant summary judgment if no genuine issue of material fact exists

15  and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

16  moving party bears the initial burden of demonstrating the absence of a genuine issue of

17  material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it

18  might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby,*

19  *Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse

20  party must present affirmative evidence, which "is to be believed" and from which all

21  "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record,

22  however, taken as a whole, could not lead a rational trier of fact to find for the non-

23

1  moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529

2  (2006); *see also Celotex*, 477 U.S. at 322.

3     Plaintiff seeks to recover for violation of Washington's Consumer Protection Act

4  ("CPA") under both affirmative misrepresentation and omission theories (Count I),

5  negligent misrepresentation (Count II), fraudulent misrepresentation (Count III), breach

6  of the express warranty (Count V), and unjust enrichment (Count VII).[3] Champion moves

7  for summary judgment on all counts. In responding to Champion's motion, Plaintiff

8  focuses on the CPA and unjust enrichment claims. The Court will therefore address those

9  two claims before turning to the misrepresentation and breach of warranty claims.

10     A.   **CPA Claims**

11     To establish a violation of the CPA, a private plaintiff must prove that (i) the

12  defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice

13  occurred in the conduct of trade or commerce; (iii) such act or practice affected the public

14  interest; (iv) the plaintiff suffered an injury to his or her business or property; and (v) a

15  causal relationship exists between the defendant's act or practice and the plaintiff's

16  injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778,

17  785–93, 719 P.2d 531 (1986). Whether conduct constitutes an unfair or deceptive trade

18  practice within the meaning of the CPA constitutes a question of law. *Robinson v. Avis*

19  *Rent A Car Sys., Inc.*, 106 Wn. App. 104, 114, 22 P.3d 818 (2001). A CPA plaintiff "need

20

21

22  [3] Count IV for fraudulent concealment and Count VI for breach of implied warranty were previously dismissed. *See* Order (docket no. 62).

23

ORDER - 10

1   not show that the act in question was *intended* to deceive," but only that it "had the

2   *capacity* to deceive a substantial portion of the public." *Hangman Ridge*, 105 Wn.2d at

3   785 (emphasis in original).

4          A CPA claim may be premised on either an affirmative misrepresentation or a

5   failure to disclose material information; Plaintiff presents both types of CPA claims. The

6   Court first addresses Plaintiff's claims relating to the affirmative statements "Biologically

7   Appropriate," "Fresh," and "Regional." The Court then turns to Plaintiff's claims

8   concerning Champion's allegedly materially-misleading omissions from the Dog Food

9   packaging.

10         **1.**    **"Biologically Appropriate"**

11          Champion contends that the presence of heavy metals in the Dog Food does not

12   render the phrase "Biologically Appropriate" misleading. Champion does not advertise

13   that its food contains no heavy metals or is free of heavy metals, and Champion does not

14   add heavy metals to the Dog Food. The parties agree that, to survive summary judgment,

15   Plaintiff must present admissible evidence that the phrase "Biologically Appropriate"

16   would mislead or have the capacity to deceive a reasonable consumer. *See* Defs.' Mot. at

17   15 (docket no. 109); Pl.'s Resp. at 19, 23 (docket no. 128).

18          In an effort to meet her burden, Plaintiff points to Boedecker's surveys, which

19   show that 82.8–84.3% of consumers would not expect Champion's Dog Food to contain

20   heavy metals. *See* Boedeker Report at Figs. 14 & 20, Ex. 1 to Coulson Decl. (docket

21

22

23

ORDER - 11

no. 106-1). Regardless of whether Boedecker's results are accurate, they do not establish that the Dog Food is not "Biologically Appropriate."[4]

A plain reading of the phrase "Biologically Appropriate" conveys that the Dog Food is fit for dogs to consume. *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1306 (10th Cir. 2022) ("The only conclusion that a reasonable consumer could draw from a package that claimed the dog food was 'Biologically Appropriate' is that it was fit for dogs to consume."). This assessment is consistent with Plaintiff's understanding of the phrase. Pl.'s Dep. at 70:19–22 ("It means what an animal, in this case because it's dog food, what should be consumed, what they were meant to consume, what is safe for them to consume.") & 89:16–17 ("'Biologically appropriate' would be . . . what is best for the dog to eat."). Plaintiff testified that she was "aware that heavy metals are naturally found in foods," *id.* at 68:18–25, and she offers no basis for concluding that the presence of heavy metals rendered the Dog Food unfit for a dog's consumption. *See* Poppenga Report at 12–13, 25, 27, & 40 (Opinion F) (docket no. 110-6). Indeed, even if heavy metals

_____

[4] Plaintiff's reliance on *State v. LA Investors, LLC*, 2 Wn. App. 2d 524, 410 P.3d 1183 (2018), is misplaced. In that case, Washington homeowners received letters in the mail from a California-based solicitation company that gave the "net impression" that they were bills mailed by the government. *Id.* at 540–41. The envelope and its "return address" suggested that it was sent by the "Local Records Office" and "referenced the United States Code," and the letter's "formatting and language" were "governmental" and filled with "largely irrelevant, but authoritative," verbiage. *Id.* at 540–41 & 543. After analyzing the entirety of the envelope and letter, the Washington Court of Appeals held "as a matter of law the mailer in this case had the capacity to deceive. Based on the net impression conveyed by the mailer, an ordinary consumer could reasonably have been misled to believe it was a government document." *Id.* at 541. Here, by contrast, Plaintiff asks this Court to depart from a plain reading of the text at issue and adopt a tortured interpretation of the phrase "Biologically Appropriate." The Court declines Plaintiff's invitation.

afford no nourishment, their inclusion in the Dog Food does not negate the "Biologically

Appropriate" tagline because

> if the only biologically appropriate foods are those that contain no
> measurable quantity of any substance which fails to provide nourishment, the
> Court doubts whether any food, either for humans or for pets, could ever be
> considered biologically appropriate. The Court finds this to be an
> unreasonable conclusion, and hence a conclusion that no reasonable jury
> could reach.

*Colangelo v. Champion Petfoods USA Inc.*, No. 18-CV-1228, 2022 WL 991518, at *20

(N.D.N.Y. Mar. 31, 2022). The Court concludes that the phrase "Biologically

Appropriate" does not have the capacity to deceive a substantial portion of the

population. Defendants' motion for summary judgment is GRANTED as to Plaintiff's

CPA claim premised on the phrase "Biologically Appropriate."

### 2. **"Fresh"**

Plaintiff contends that, based on Champion's "Fresh" packaging statements and

labeling, a reasonable consumer would have been deceived as to the contents of the Dog

Food. Champion argues that the packages do contain fresh ingredients, that its packages

disclose the inclusion of "non-fresh" ingredients, and that, as a matter of law, the "Fresh"

statements are not deceptive or misleading. Indeed, Champion's packaging does not say

that the Dog Food is "100% Fresh," that "all" ingredients are fresh, or that "only" fresh

ingredients are used. Nevertheless, Plaintiff presents enough evidence to create a factual

dispute concerning whether Champion's "Fresh" statements could mislead a reasonable

consumer.

Boedeker's consumer studies suggest that a reasonable consumer might consider the "Fresh" statements misleading; 84.2% to 84.7% of Boedeker's survey respondents indicated that they would understand the "Fresh" statements to mean that the product contains only fresh ingredients unless the package specifically stated otherwise. Boedeker Report at Figs. 12 & 18 (docket no. 106–1); Expert Order at 4–9. Silverman opined that, given Champion's "Fresh" packaging statements, a reasonable consumer would not expect non-fresh ingredients. Silverman Report at ¶¶ 33(h), 33(i), & 33(k) (docket no. 108-1); Expert Order at 12–16. Another relevant factor precluding summary judgment is the number of times "fresh" appears on Champion's packaging, *see* Pl.'s Resp. at 26 (docket no. 128) ("as many as 28 times"), when compared to the much less frequent use of phrases indicating that the Dog Food contains non-fresh or freeze-dried ingredients. Champion's motion for summary judgment as to Plaintiff's CPA claim relating to the "Fresh" statements is DENIED.

### 3. **"Regional"**

Plaintiff construes Champion's "Regional" message as indicating that the ingredients are sourced from the area "where the food is produced," Pl.'s Dep. at 90:20-23, and she alleges that a reasonable consumer would find Champion's "Regional" representations false and misleading because Champion uses ingredients in the Dog Food that are obtained from locations far away from the production facility. Plaintiff presents evidence, namely Boedeker's consumer survey results and Silverman's opinions, that raises a genuine dispute of material fact as to whether Champion's "Regional" statements could mislead a reasonable consumer. Boedeker's studies showed that individuals who

viewed Champion's "Regional" labels would form the following expectations: (i) the dog food "does not contain imported ingredients," and (ii) "[e]ach ingredient in the dog food . . . is from the region." Boedeker Report at Figs. 13 & 19 (docket no. 106-1). Based on his experience, Silverman has opined that "[c]onsumers would see the presence of . . . non-regional ingredients as inconsistent with . . . Champion['s] statements." Silverman Report at ¶ 33(i) (docket no. 108-1).

In seeking summary judgment, Champion argues that "regional sourcing is a '**focus**'" of its packaging, but it has never advertised the Dog Food as containing "only" regional ingredients or represented that "all" or "100%" of the ingredients are regional. Defs.' Mot. at 19–20 (docket no. 109) (emphasis in original). Whether reasonable consumers would understand the nuanced difference between "Regional" and "only," "all," or "100%" regional, and therefore not be misled or deceived, is a factual question that the Court cannot decide in dispositive motion practice. Champion also argues that any false or misleading statement could not be material because Plaintiff bought bags of dog food that clearly displayed ingredients not comporting with her definition of "Regional." *See* Pl.'s Dep. at 97:19–100:4. Champion's contention, however, runs contrary to Washington law, which indicates that

> materiality is not a necessary component of the first element [of a CPA claim that is based on an affirmative misrepresentation]. While we have mentioned materiality in passing, generally noting that a deceptive framing or omitted fact was sufficiently material to establish the element, we have never found materiality was necessary as a matter of law. We specifically reject that proposition now.

1  *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn.2d 310, 318, 472 P.3d 990 (2020)

2  (citations omitted). Champion's motion for summary judgment is DENIED as to

3  Plaintiff's CPA claim premised on any affirmative misrepresentations about "Regional"

4  ingredients.[5]

5  **4.   Omissions**

6  The decision in *Young*, relating to affirmative misrepresentations, does not appear

7  to have disturbed jurisprudence requiring that materiality be proven when a CPA plaintiff

8  alleges harm based on an omission or failure to disclose. *See* 196 Wn.2d at 323

9  (McCloud, J., concurring); *see also Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*, 197

10  Wn. App. 875, 886–92, 391 P.3d 582 (2017). An omission theory also differs from an

11  affirmative misrepresentation claim with respect to causation. *Deegan*, 197 Wn. App. at

12  886. In material omission cases, "Washington courts apply a rebuttable presumption that

13  the plaintiff relied on the defendant's representations concerning the product, so as to

14  avoid putting . . . plaintiff[s] in the 'impossible position' of proving 'they believed the

15  opposite of the omitted fact when they made their purchase.'" *Nazar v. Harbor Freight*

16  *Tools USA Inc.*, No. 2:18-cv-348, 2020 WL 4741091, at *3 (E.D. Wash. Aug. 14, 2020)

17  (quoting *Deegan,* 197 Wn. App. at 886)); *see also Blough v. Shea Homes, Inc.*, No. 12-

18  cv-1493, 2014 WL 3694231, at *13 (W.D. Wash. July 23, 2014) (citing *Morris v. Int'l*

19  *Yogurt Co.*, 107 Wn.2d 314, 328, 729 P.2d 33 (1986)). This presumption can be rebutted

20

21  _____

22  [5] The Court reaches a different result with respect to Plaintiff's omission theory relating to Champion's "Regional" statements.

23

ORDER - 16

1   by a showing that "the plaintiff's decision would have been unaffected even if the

2   omitted fact had been disclosed." *Blough*, 2014 WL 3694231, at \*14.

3        Plaintiff alleges that Champion should be held liable under the CPA for three

4   omissions: (i) failure to disclose the inclusion of "non-fresh" ingredients; (ii) failure to

5   adequately divulge the use of "non-regional" ingredients; and (iii) failure to warn about

6   the risk that heavy metals might be present. As to the "non-fresh" omissions, Champion

7   denies that it failed to make the requisite disclosure because "[t]he front of the bags states

8   it includes 'freeze-dried' ingredients, and 'fresh or raw' ingredients," and "[t]he back of

9   the bags has large panels indicating the amount, in pounds, of fresh, raw, dried,

10  dehydrated, or oils that were used to make the food." Defs.' Mot. at 30 (docket no. 109).

11  Champion agrees, however, that it did not disclose the use of regrinds[6] or expired

12  ingredients in the Dog Food.

13       Champion also concedes that regrinds and expired ingredients are a "subspecies of

14  'non-fresh'" materials. *Id.*; *see also* Defs.' Reply at 9 (docket no. 135) ("these are simply

15  examples of non-fresh ingredients"). Champion argues that its disclosure of other non-

16  fresh ingredients, *i.e.*, components that are freeze-dried, dried, dehydrated, or oils, told

17  consumers what they needed to know, namely that "non-fresh ingredients are included."

18  Defs.' Reply at 14. Champion cites no evidence to support the proposition that Dog Food

19

20  ---

21  [6] "Regrinds" are ingredients that are recooked and included in the Dog Food after having already been cooked and not previously used because they failed nutritional, water activity, product temperature, or microbiological testing or they were too old to sell. *See* SAC ¶¶ 89–90; *see also Colangelo*, 2022 WL

22  991518, at \*4 (defining "regrinds" as "previously manufactured dog or cat food, rejected for quality assurance issues, ground up, and reincorporated into a new batch of food").

23

purchasers would have understood, from the packaging, that the product incorporated regrinds and expired ingredients. *See id.* (citing Statement of Undisputed Material Facts at ¶¶ 13–19, Defs.' Mot. (docket no. 109) (merely describing the packaging and indicating that Plaintiff read the various labels). In contrast, Plaintiff's expert has opined that reasonable consumers would consider Champion's packaging as being inconsistent with the presence of regrinds and expired ingredients. Silverman Report ¶¶ 177–82 (docket no. 108-1). Plaintiff has raised questions of fact as to whether Champion's reference to frozen and dried ingredients, as well as oils, covers all of the "non-fresh" ingredients in the Dog Food, and whether Champion's failure to disclose its use of expired ingredients and regrinds had the capacity to materially mislead consumers. Defendants' motion for summary judgment as to Plaintiff's CPA claim premised on the "non-fresh" omissions is DENIED.

In contrast to the "non-fresh" omissions, with respect to the "regional" omissions, Plaintiff fails to present sufficient evidence to create a triable issue as to the materiality of any such omissions. First, as indicated in its motion, Champion actually disclosed that it sourced ingredients from non-regional suppliers. *See* Defs.' Mot. at 30 (docket no. 109). Second, Plaintiff's own conduct demonstrated that any "regional" omissions were not material. For example, although the ORIJEN Six Fish packages indicated that the fish was caught in New England, which did not fall within Plaintiff's understanding of the word "Regional," she purchased the bags anyway. *See* Pl.'s Dep. at 97:19–100:4. Plaintiff also purchased the ACANA Lamb & Apple bag, which states that the lamb is "[g]rass fed on Kentucky and New Zealand ranches." *Id.* at 116:17–117:2. Considering

1   the facts in the light most favorable to Plaintiff, the Court concludes, as a matter of law,

2   that any omissions concerning the region in which ingredients were sourced were not

3   material. As a result, no presumption of reliance arises. Even if Plaintiff were entitled to

4   such a presumption, Champion has rebutted it by showing that Plaintiff's purchasing

5   decision "would have been unaffected even if the omitted fact had been disclosed." *See*

6   *Blough*, 2014 WL 3694231, at *14. Defendants' motion for summary judgment is

7   GRANTED as to Plaintiff's CPA claim relating to the "regional" omissions.[7]

8          Similarly, regarding the "heavy metals" omissions, the lack of materiality and

9   reliance defeat Plaintiff's CPA claim. Plaintiff was aware that seafood could contain

10  mercury and that heavy metals are "naturally found in foods." Pl.'s Dep. at 68:18–25.

11  Nevertheless, she bought Champion's Dog Food, and she cannot now demonstrate that

12  the risk of the product containing heavy metals was material to her decision or benefit

13  from any presumption of reliance, which is rebutted by her own testimony.[8] *See*

14  *Capelouto v. Valley Forge Ins. Co.*, 98 Wn. App. 7, 20, 990 P.2d 414 (1999) (affirming

15  summary judgment where "there is no indication that [the plaintiff] was harmed or misled

16

---

17  [7] The different outcomes concerning the affirmative "Regional" statements, as to which Plaintiff's CPA

18  claim survives Champion's summary judgment motion, and the "regional" omissions, which are no longer part of this case, result from the different standards applicable to affirmative misrepresentations and omissions.

19  [8] With respect to "heavy metals" omissions, Plaintiff's reliance on Boedeker's surveys is misplaced.

20  Boedeker's "expectations" survey was not designed to provide cause-and-effect (or reliance) data, *see Zarinebaf*, 2022 WL 910638, at *3, and his conjoint studies did not use any control groups or evaluate

21  whether the price respondents were willing to pay was or would be affected by pre-existing knowledge or supplied information about the presence of heavy metals in food sources. *Cf. Jones v. United States*, 933

22  F. Supp. 894, 899 (N.D. Cal. 1996), *aff'd*, 127 F.3d 1154 (9th Cir. 1997) (concluding that, absent a control group, a study could not demonstrate causality).

23

ORDER - 19

1   by [the defendant's] omission and, in fact, the record indicates that he was familiar with

2   the [omitted] rule at the time [the plaintiff] filed his claim"). Plaintiff does not contend

3   that the levels of heavy metals in the Dog Food present a risk of harm to any pet that

4   ingests the products, and Champion's expert has opined that the amounts of arsenic,

5   cadmium, lead, and mercury are "well below concentrations that have been determined to

6   be associated with adverse effects." Poppenga Report at 40 (Opinion F) (docket no. 110-

7   6). Champion's motion for summary judgment is GRANTED as to Plaintiff's CPA claim

8   concerning the "heavy metals" omissions.

9       **B.    Unjust Enrichment**

10      "Unjust enrichment is the method of recovery for the value of the benefit retained

11   absent any contractual relationship because notions of fairness and justice require it."

12   *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).[9] Both parties (and the

13   Court) recognize that Plaintiff's unjust enrichment claim is intertwined with her CPA

14   claim. Plaintiff's CPA claim survives in part, which in turn creates a basis for her unjust

15   enrichment claim. Champion's motion for summary judgment is GRANTED in part and

16   DENIED in part as to Plaintiff's unjust enrichment claim, which is hereby narrowed to be

17   co-extensive with her CPA claim.

18

19   _____

20   [9] To prevail on a claim of unjust enrichment, a plaintiff must prove: (i) a benefit was conferred upon the
     defendant by the plaintiff; (ii) the defendant knew of the benefit; and (iii) the defendant accepted the
21   benefit under "such circumstances as to make it inequitable for the defendant to retain the benefit without
     the payment of its value." *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159–60, 810
22   P.2d 12 (1991) (quoting BLACK'S LAW DICTIONARY 1535–36 (6th ed. 1990)).

23

### C.   **Plaintiff's Other Claims**

Plaintiff's claims for negligent[10] and fraudulent misrepresentation[11] fail because Plaintiff cannot make the requisite showing that she reasonably relied on Champion's representations or omissions. Plaintiff's claim for breach of express warranty[12] lacks merit because Champion's packaging made no promise or guarantee that the Dog Food was "100%" fresh, regional, or free of heavy metals; the presence of non-fresh, non-regional, and/or heavy-metal ingredients cannot constitute a breach when an "all or nothing" warranty was never a basis for the bargain. Defendants' motion for summary judgment is GRANTED as to Plaintiff's claims for negligent misrepresentation, fraudulent misrepresentation, and breach of express warranty, and those claims are DISMISSED with prejudice.

---

[10] Negligent misrepresentation has six elements: "(1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages." *Alexander v. Sanford*, 181 Wn. App. 135, 177, 325 P.3d 341 (2014).

[11] Fraudulent (or intentional) misrepresentation has nine elements, which must be proven by clear and convincing evidence: "(1) a representation of an existing fact; (2) the fact is material; (3) the fact is false; (4) the defendant knew the fact was false or was ignorant of its truth; (5) the defendant intended the plaintiff to act on the fact; (6) the plaintiff did not know the fact was false; (7) the plaintiff relied on the truth of the fact; (8) the plaintiff had a right to rely on it; and (9) the plaintiff had damages." *Baddeley v. Seek*, 138 Wn. App. 333, 338–39, 156 P.3d 959 (2007).

[12] The operative pleading quotes the Uniform Commercial Code ("UCC") provision defining express warranties, *see* SAC ¶ 293 (citing RCW 62A.2-313), but Plaintiff does not appear to bring her claim under the UCC. Rather, Plaintiff seems to assert her warranty claim under Washington's Product Liability Act, which requires her to show that "(1) the warranty was made part of the basis of the bargain; (2) the warranty relates to a material fact concerning the product; and (3) the warranty turns out to be untrue." *See Bryant v. Wyeth*, 879 F. Supp. 2d 1214, 1226 (W.D. Wash. 2012) (citing RCW 7.72.030(2)(b)).

## II.   <u>Class Certification</u>

"Class actions are 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). A party seeking class certification must meet the requirements set forth in Federal Rule of Civil Procedure 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under Rule 23(a), the party seeking certification must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The party seeking certification must also "satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345. Plaintiff relies predominantly on Rule 23(b)(3),[13] which requires a party seeking certification to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

---

[13] Because Plaintiff primarily seeks monetary relief, her request for an injunctive relief class is inappropriate. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (holding that "Rule 23(b)(2) certification is inappropriate where the primary relief sought is monetary"); *Ballew v. Matrixx Initiatives, Inc.*, No. CV-07-267, 2008 WL 4831481, at *6 (E.D. Wash. Oct. 31, 2008) (denying certification under Rule 23(b)(2) because "the primary relief sought is damages, not declaratory or injunctive relief"). Plaintiff devotes almost her entire 30-page opening brief to her proposed 23(b)(3) classes, tacking on a less-than-one-page discussion of Rule 23(b)(2) as a last-ditch effort. Plaintiff's request to certify a Rule 23(b)(2) class is disingenuous, and it is DENIED.

1    Although the Rule 23 factors "have been construed permissively," courts must

2    nonetheless "engage in a 'rigorous analysis' of each . . . factor when determining whether

3    plaintiffs seeking class certification have met the requirements of Rule 23." *Ellis v.*

4    *Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). A plaintiff must prove the

5    facts necessary to satisfy the Rule 23 criteria by a preponderance of the evidence. *Olean*

6    *Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir.

7    2022), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143

8    S. Ct. 424 (2022). "In determining whether the 'common question' prerequisite is met, a

9    district court is limited to resolving whether the evidence establishes that a common

10   question is *capable* of class-wide resolution, not whether the evidence in fact establishes

11   that plaintiffs would win at trial. While such an analysis may 'entail some overlap with

12   the merits of the plaintiff's underlying claim,' the '[m]erits questions may be considered

13   [only] to the extent [ ] that they are relevant to determining whether the Rule 23

14   prerequisites for class certification are satisfied.'" *Id.* at 666–67 (emphasis and alterations

15   in original, citations omitted).

16         With respect to the ten classes that Plaintiff seeks to certify, she relies solely on

17   her misleading omissions theory; she does not ask to certify the classes with respect to

18   any affirmative misrepresentation claim. *See* Pl.'s Mot. at 2 (docket no. 101). Because the

19   Court has dismissed the CPA and unjust enrichment claims relating to any "non-regional"

20   or "heavy metals" omissions, the Court addresses only whether Plaintiff has made the

21   necessary showing to certify one or more classes with respect to the "non-fresh"

22   omissions. In opposing Plaintiff's motion for class certification, Champion has focused

23

1   on Rule 23(b)(3)'s requirement that common issues predominate. The Court will start

2   there as well. *See Zinser*, 253 F.3d at 1186, 1186 n.3, & 1189–97 (affirming a district

3   court's denial of class certification for failure to meet the requirements of Rule 23(b)

4   without first analyzing whether the Rule 23(a) factors were satisfied).

5           Commonality, within the meaning of Rule 23, requires Plaintiff to demonstrate

6   that the claims of all class members depend on "a common contention" of such nature as

7   "is capable of classwide resolution." *Dukes*, 564 U.S. at 350. The test is whether the

8   determination of the truth or falsity of such common contention "will resolve an issue

9   that is central to the validity of each one of the claims in one stroke." *Id.* "What matters

10  . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of

11  a class-wide proceeding to generate common *answers* apt to drive the resolution of the

12  litigation." *Id.* (emphasis in original, quoting Richard A. Nagareda, *Class Certification in*

13  *the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)). The predominance

14  inquiry asks "whether the common, aggregation-enabling, issues in the case are more

15  prevalent or important that the non-common, aggregation-defeating, individual issues."

16  *Olean*, 31 F.4th at 664 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453

17  (2016)).

18          In opposing class certification, Champion argues that the Ninth Circuit's decision

19  in *Reitman v. Champion Petfoods USA, Inc*., 830 F. App'x 880 (9th Cir. 2020), controls

20  the outcome of this case. In *Reitman*, the plaintiffs attempted to certify one class

21  comprised of purchasers of 23 different formulas of Champion's dog food. *See Reitman*

22  *v. Champion Petfoods USA, Inc.*, No. CV 18-1736, 2019 WL 7169792, at *1 n.1 (C.D.

23

Cal. Oct. 30, 2019), *aff'd*, 830 F. App'x 880 (9th Cir. 2020). The district court concluded that common questions of law or fact did not predominate because the messages differed from bag to bag, and the dog food ingredients varied from formula to formula. *Id.* at *7–10. On appeal, the plaintiffs argued that the district court "erred by focusing its predominance analysis only on affirmative misrepresentations and failing to consider allegedly uniform and material omissions from the dog food bag packaging." 830 F. App'x at 881. The Ninth Circuit disagreed, holding that

> [t]he district court's conclusion that individualized inquiries requiring bag-to-bag determinations predominate over common questions applies whether the misrepresentations are based on affirmative statements on, or omissions from, the packaging. And Reitman does not explain how creating subclasses based on diets would cure the need for individualized bag-to-bag inquiries. Accordingly, the district court correctly held that the predominance requirement had not been satisfied and that creating subclasses would be futile.

*Id.*

Plaintiff in this case attempts to correct the pleading errors made by the plaintiffs in *Reitman*. Instead of moving to certify one class, Plaintiff proposes ten different classes[14] and pursues, on behalf of these classes, only an omissions theory. Plaintiff's

---

[14] The ten proposed classes consist of:

- ***Acana Singles Lamb & Apple Class:*** All persons residing in the State of Washington who purchased Acana Singles Lamb & Apple in the State of Washington from July 1, 2016, to the present;

- ***Acana Singles Duck & Pear Class:*** All persons residing in the State of Washington who purchased Acana Singles Duck & Pear in the State of Washington from July 1, 2016, to the present;

- ***Acana Singles Pork & Squash Class:*** All persons residing in the State of Washington who purchased Acana Pork & Squash in the State of Washington from July 1, 2016, to the present;

efforts do not lead to a different result. With respect to the sole remaining omissions

claim, Plaintiff's contention is that she has raised common questions with common

answers because regrinds and expired ingredients were constantly present in the Dog

Food and none of Champion's packaging disclosed this fact. Plaintiff's argument,

however, ignores the variation from bag to bag, and from formula to formula, with

respect to the presence of regrinds and expired ingredients. According to Champion's

Director of Ingredient Management and Supplier Partnerships,

> [t]he amount of regrinds, ***if any at all***, that are added into the dry ingredients portion of a production run (or lot) varies. The amount to be added to any particular run is determined by policies set by Champion's Research & Innovation Team, but it is intended to be limited [to] up to a maximum of 5% of the bulk dry ingredients in concentrate. In exceptional circumstances, the inclusion of regrinds may exceed 5% of the bulk dry ingredients of a diet. . . . [O]nly certain diets can accept regrinds from certain other diets . . . and only in small percentages so that the guaranteed analysis and the ingredient panel is not materially altered.

---

- ***Acana Heritage Meats Class:*** All persons residing in the State of Washington who purchased Acana Heritage Meats in the State of Washington from July 1, 2016, to the present;

- ***Acana Regionals Grasslands Class:*** All persons residing in the State of Washington who purchased Acana Regionals Grasslands in the State of Washington from July 1, 2016, to the present;

- ***Acana Regionals Wild Atlantic Class:*** All persons residing in the State of Washington who purchased Acana Regionals Wild Atlantic in the State of Washington from July 1, 2016, to the present;

- ***Acana Heritage Free-Run Poultry Class:*** All persons residing in the State of Washington who purchased Acana Heritage Free-Run Poultry in the State of Washington from July 1, 2016, to the present;

- ***Acana Regionals Meadowland Class:*** All persons residing in the State of Washington who purchased Acana Regionals Meadowland in the State of Washington from July 1, 2016, to the present;

- ***Acana Heritage Freshwater Fish Class:*** All persons residing in the State of Washington who purchased Acana Heritage Freshwater Fish in the State of Washington from July 1, 2016, to the present; and

- ***Orijen Six Fish Class***: All persons residing in the State of Washington who purchased Orijen Six Fish in the State of Washington from July 1, 2016, to the present.

Milam Decl. ¶¶ 39–40, Ex. 4 to Coulson Decl. (docket no. 133-4) (emphasis added); *see also* Johnston Decl. at ¶ 21, Ex. 5 to Coulson Decl. (docket no. 133-5) ("The amount of regrinds, if any at all, vary for any given production run. Most production runs do not have any regrinds in them.). Director Milam has characterized Champion's use of expired ingredients as infrequent, explaining that items that are beyond their "best-used-by" date are tested and discarded if unsafe for inclusion, and "[i]n the few times when expired ingredients are used, it is almost always dried ingredients, not fresh or raw ingredients." Milam Decl. ¶¶ 43–46 (docket no. 133-4). In other words, a particular package of Dog Food might or might not include regrinds and/or expired ingredients. Thus, whether a member of any of the ten putative classes purchased a bag containing food that was inconsistent with the packaging and was or could have been deceived by the labels is not a question with a "common answer," but rather an issue that would require individualized assessment about which production lot or lots of the specific diet each person bought.

The complexity of the issue becomes more apparent when the typical shopping habits of Dog Food purchasers are considered. As reflected by the purchase histories of various individuals who have sued Champion, consumers buy a variety of Champion diets, mixing and matching among the different formulas. *See* Coulson Decl. ¶¶ 2–11, 13–17, 19, 21–22, 24–33, Ex. 10 to Coulson Decl. (docket no. 133-10). Thus, some individuals might be in only one of the ten proposed classes, while others would be in every class, and again, whether any of them bought food containing regrinds and/or expired ingredients would require individualized analysis. In addition, the possible permutations are so numerous as to make the exercise nearly impossible; each putative

1   class member might have bought one or more formulas with (i) regrinds and expired

2   ingredients, (ii) only regrinds, (iii) only expired ingredients, and/or (iv) neither regrinds

3   nor expired ingredients, and the frequency and quantity within each of these four

4   categories might range from only once (or one bag) to constantly or every time (or

5   innumerable bags) during the proposed class years. Parsing through the countless

6   combinations of dog food formulas, production runs, and consumer purchases is not the

7   work that Rule 23 meant for the Court to do.

8       In support of her position, Plaintiff relies heavily on *Zeiger v. WellPet LLC*, 526

9   F. Supp. 3d 652 (N.D. Cal. 2021). *Zeiger* is distinguishable. In *Zeiger*, the plaintiff

10  alleged that the amounts of arsenic, lead, and bisphenol A ("BPA") in WellPet's dog

11  foods presented a health risk to dogs. *Id.* at 663–64. The *Zeiger* Court concluded that the

12  plaintiff had demonstrated a genuine dispute of material fact about the dangerousness of

13  the levels of arsenic and lead, but granted summary judgment in WellPet's favor with

14  respect to the BPA claim. *Id.* at 680–82. The *Zeiger* Court certified a Rule 23(b)(2) class

15  for injunctive relief, and denied certification as to a Rule 23(b)(3) class, but without

16  prejudice to the plaintiff attempting to present a better damages model. *Id.* at 692–98. In

17  this case, Plaintiff does not allege that the presence or amount of regrinds or expired

18  ingredients is unsafe, and she has not made the type of showing necessary for a

19  Rule 23(b)(2) class. Moreover, unlike the three products at issue in *Zeiger*, two of which

20  had only "a few relatively minor changes over the course of many years," *id.* at 696, and

21  all of which experienced any changes "over time in an essentially uniform way" that "can

22  be addressed class-wide," *id.* at 696–97, the differences among the Dog Food in this case

23

occurred from lot to lot, or bag to bag. Plaintiff's CPA and unjust enrichment claims, which allege that failure to disclose the presence of regrinds and/or expired ingredients was deceptive, are not susceptible to class-wide resolution.

Although Plaintiff has attempted to draft around the Ninth Circuit's decision in *Reitman*, the reasoning of *Reitman* applies with full force and effect to the ten classes that Plaintiff has proposed to certify. With respect to the "non-fresh" omissions (regrinds and expired ingredients) theory, Plaintiff has not identified questions with "common *answers*," *see Dukes*, 564 U.S. at 350 (emphasis in original), or shown that "common, aggregation-enabling, issues" are more prevalent or important that "non-common, aggregation-defeating, individual issues," *see Olean*, 31 F.4th at 664. Plaintiff has not satisfied Rule 23(b)(3)'s predominance requirement and, as a result, Plaintiff's motion to certify the ten proposed classes is DENIED.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)    Plaintiff's motion for class certification, docket no. 101, is DENIED;

(2)    Defendants' motion for summary judgment, docket no. 109, is GRANTED in part and DENIED in part as follows:

(a)    Plaintiff's CPA (Count I) and unjust enrichment (Count VII) claims are DISMISSED in part as to (i) affirmative misrepresentation and omission theories relating to the phrases "Biologically Appropriate," "Delivering Nutrients Naturally," "Nourish as Nature Intended," and "Ingredients We Love [From]

People We Trust," and (ii) theories premised on "regional/non-regional" and "heavy metals" omissions;

(b)     Plaintiff's CPA (Count I) and unjust enrichment (Count VII) claims survive as to (i) affirmative misrepresentation theories based on the "Fresh" and "Regional" packaging messages, and (ii) the "non-fresh" omissions theory vis-à-vis Champion's inclusion of regrinds and expired ingredients; and

(c)     Plaintiff's negligent misrepresentation (Count II), fraudulent misrepresentation (Count III), and breach of express warranty (Count V) claims are DISMISSED with prejudice.

(3)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 17th day of May, 2023.

Thomas S. Zilly
United States District Judge